United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 11, 2006**

Charles R. Fulbruge III
Clerk

REVISED SEPTEMBER 28, 2006

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 05-40850

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JORGE EDUARDO CASTRO-TREVINO

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before KING, GARWOOD, and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

Jorge Eduardo Castro-Trevino (Castro-Trevino) appeals his conviction for exporting from the United States into Mexico 11,500 rounds of ammunition in violation of 22 U.S.C. §§ 2778(b)(2) and (c); 22 C.F.R. §§ 121.1, 123.1(a), and 127.3; and 18 U.S.C. § 2. Castro-Trevino asserts that his guilty plea was not supported by a sufficient factual basis because his offending conduct only

amounted to an attempt to export ammunition, rather than actual exportation. He asks that his guilty plea be vacated and the matter remanded so that he may plead anew. We decline to do so, but modify the judgment to reflect conviction for attempted exportation only and affirm the judgment as so modified.

## Facts and Proceedings Below

The facts in this case are undisputed. As reflected by the presentence report (PSR), to which appellant's counsel stated at sentencing he had no objections, on December 15, 2004, special agents from the United States Bureau of Immigration and Customs Enforcement (ICE) observed Castro-Trevino, accompanied by his three children, purchase a large quantity of ammunition from the Wal-Mart Super Center store in Brownsville, Texas. Later that day, Castro-Trevino attempted to return to the Republic of Mexico via the Gateway International Bridge. When ICE agents inspected the vehicle, Castro-Trevino denied possession of currency in excess of $10,000, firearms, or ammunition. Castro-Trevino was then referred to the secondary inspection area, at which time Castro-Trevino admitted to possessing ammunition in the vehicle. Agents then discovered undeclared, assorted ammunition hidden in the car. The PSR described this series of events by stating: "Castro-Trevino attempted to export the ammunition through the Gateway International Bridge but was detained by ICE agents."

2

In total, the agents found thirty boxes, or 11,500 rounds, of ammunition: twenty boxes of .22 caliber bullets; three boxes of .357 magnum bullets; three boxes of 9 mm bullets; three boxes of .380 automatic bullets; and one box of .25 automatic bullets.

After being read his *Miranda* rights, Castro-Trevino admitted that he had entered the United States from Mexico solely to purchase the ammunition, and that he knew it was illegal to export ammunition from the United States to Mexico. Castro-Trevino admitted further that he was hired to purchase the ammunition and export it but refused to disclose who had hired him, taking full responsibility for his actions. Castro-Trevino claimed that he was to receive approximately $45 for every box of .22 caliber rounds he successfully exported into Mexico but, as of that time, was not to receive payment for the other ten boxes of ammunition.

Castro-Trevino then admitted to previously exporting, one month before, a load of ammunition into Mexico from the United States for a payment of approximately $1,000. Agents corroborated this statement by way of a Treasury Enforcement Communications System search and a receipt found in Castro-Trevino's car for ammunition purchased on that previous date.

On January 11, 2005, the grand jury returned a one-count indictment[1] charging Castro-Trevino with the offense of knowingly and willfully exporting from the United States to Mexico ammunition designated as a defense article on the United States Munitions List, without first acquiring a license or written authorization from the State Department, in violation of 22 U.S.C. §§ 2778(b)(2) and (c);[2] 22 C.F.R. §§ 121.1,[3] 123.1(a),[4] and

---

[1]The indictment reads as follows:
"On or about December 15, 2004, in the Southern District of Texas, and within the jurisdiction of the Court, Defendant Jorge Eduardo Castro-Trevino did knowingly and willfully export and cause to be exported from the United States to Mexico a defense article, that is 11,500 rounds of assorted ammunition which was designated as a defense article on the United States Munitions List, without having first obtained from the Department of State a license for such export or written authorization for such export.
    In violation of Title 22, United States Code, Sections 2778(b)(2) and 2778(c), and Title 22, Code of Federal Regulations, Sections 121.1, 123.1(a) and 127.3, and Title 18 United States Code, Section 2."

[2]22 U.S.C. §§ 2778(b)(2) and (c) read, in pertinent part:
(b)(2) Except as otherwise specifically provided in regulations . . . no defense articles or defense services designated by the President under subsection (a)(1) of this section may be exported or imported without a license for such export or import, issued in accordance with this chapter and regulations issued under this chapter. . . .
(c) Any person who willfully violates any provision of this section or section 2779 of this title, or any rule or regulation issued under either section . . . shall upon conviction be fined for each violation not more than $1,000,000 or imprisoned not more than ten years, or both.

[3]22 C.F.R. § 121.1 comprises the United States Munitions List, which lists the items designated as defense articles and subject to the requirements of 22 U.S.C. § 2778.

[4]22 C.F.R. § 123.1(a) provides:
"Any person who intends to export or to import temporarily a defense article must obtain the approval of the Directorate of Defense Trade Controls prior to the export or temporary import . . . ."

4

127.3;[5] and 18 U.S.C. § 2.[6]  On February 18, 2005, before a United States Magistrate Judge, Castro-Trevino entered a plea of guilty to the offense alleged in the indictment.  There was no plea agreement.  The magistrate judge then issued his Report and Recommendation that the district court accept the guilty plea.

On May 24, 2005, the district court in open court adopted the Report and Recommendation, accepted the guilty plea and found Castro-Trevino guilty of the offense charged in the indictment, counsel for the government and for appellant each stating they had no objection and appellant personally stating there was no reason his plea should not be accepted.  The PSR, as to which counsel for each party stated there were no objections, determined that, under U.S.S.G. § 2M5.2(a)(1), Castro-Trevino's base offence level was twenty-six, but three levels were deducted due to Castro-Trevino's acceptance of responsibility.  Therefore, combined with his category I criminal history, the applicable guideline range was between forty-six and fifty-seven months. Castro-Trevino filed an unopposed motion for a downward departure

_____

[5]22 C.F.R. § 127.3 provides, in pertinent part:
"Any person who willfully . . . [v]iolates any provision of section 38 or section 39 of the Arms Export Control Act (22 U.S.C. 2778 and 2779), or any undertaking specifically required by part 124 of this subchapter . . . shall upon conviction be subject to a fine or imprisonment, or both, as prescribed by 22 U.S.C. 2778(c)."

[6] 18 U.S.C. § 2 provides:
"(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

based upon U.S.S.G. § 2M5.2, comment (n.1), which allows a downward departure when the offense is determined to be not harmful, or without the potential to be harmful, to a security or foreign policy interest of the United States.

The district court denied the motion for downward departure for three primary reasons: Castro-Trevino had his children with him at the time he was apprehended; Castro-Trevino had admitted in open court to previously engaging in the same criminal activity, albeit without the knowledge of law enforcement officials; and it was a very dangerous act.[7] The district court then sentenced Castro-Trevino to forty-six months' imprisonment and three years of supervised release.[8]

Castro-Trevino timely appealed, contending that there was an insufficient factual basis for his guilty plea in violation of Federal Rule of Criminal Procedure 11(b)(3), in that the evidence shows only an attempt to export, not a completed exportation as charged in the indictment.

## Discussion

---

[7]To describe the dangerous nature of the act to which Castro-Trevino pleaded guilty, the sentencing court noted:
> "It may be true that this wasn't harmful to the security interest of the United States, but it's not a mandatory downward departure on the court. I choose not to do it. I think this is a very dangerous act. It's the second time he's done it. Taking 11,000 rounds of ammunition into a situation in Mexico here on the border where it's already . . . a dangerous situation . . . with rival gangs harming each other and innocent people, and so I'm not granting it."

[8]No fine was imposed, and on the government's motion the $100 special assessment was remitted.

## A. Standard of Review

Guilty pleas are reviewed for compliance with Rule 11. *United States v. Reasor*, 418 F.3d 466, 470 (5th Cir. 2005); *United States v. Marek*, 238 F.3d 310, 314 (5th Cir. 2001) (en banc). Rule 11(b)(3) requires that "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." The Supreme Court in *McCarthy v. United States* explained:

> "Requiring this examination of the relation between the law and the acts the defendant admits having committed is designed to 'protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.'" 89 S.Ct. 1166, 1171 (1969) (quoting Fed.R.Crim.P. 11, Notes of Advisory Committee on Criminal Rules).

The factual basis for the guilty plea "must appear in the record . . . and must be sufficiently specific to allow the court to determine that the defendant's conduct was within the ambit of that defined as criminal." *United States v. Oberski*, 734 F.2d 1030, 1031 (5th Cir. 1984). Historically, any failure in Rule 11 procedures surrounding a guilty plea was considered to be irreparable error warranting automatic reversal.[9] In 1983, however, Rule 11(h)[10] was promulgated, and the Supreme Court has

---

[9] *See McCarthy*, 89 S.Ct at 1174; *United States v. Johnson*, 1 F.3d 296, 297 (5th Cir. 1993)

[10] FED.R.CRIM.P. 11(h) provides: "A variance from the requirements of this rule is harmless error if it does not affect substantial rights."

7

since shown reluctance to overturn pleas unless prejudice can be shown on the record as a whole. *See United States v. Vonn*, 122 S.Ct 1043, 1054–55 (2002); *United States v. Dominguez Benitez*, 124 S.Ct. 2333, 2339 (2004). *Cf. United States v. Timmreck*, 99 S.Ct 2085, 2087–88 (1979) (challenge under 28 U.S.C. § 2255).

Because Castro-Trevino objects to the Rule 11 error for the first time on appeal, this court must review for plain error only. *Vonn*, 122 S.Ct at 1046; *Marek*, 238 F.3d at 315. Under plain error review, Castro-Trevino bears the burden to show that (1) there is an error; (2) the error is clear and obvious; and (3) the error affects his substantial rights. *Marek*, 238 F.3d at 315. The relief for error is tied to a prejudicial effect, so the error must have had a "'substantial and injurious effect or influence in determining the . . . verdict.'" *Dominguez Benitez*, 124 S.Ct. at 2335 (citing *Kotteakos v. United States*, 66 S.Ct. 1239, 1253 (1946)); FED.R.CRIM.P. 52(b). Further, even if Castro-Trevino establishes clear error, we will not vacate the judgment unless the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Marek*, 238 F.3d at 315; *see also United States v. Olano*, 113 S.Ct. 1770, 1778–79 (1993). To show prejudice, Castro-Trevino "must show a

reasonable probability that, but for the error, he would not have entered the plea." *Dominguez Benitez*, 124 S.Ct. at 2336.[11]

Because both parties agree that the record lacks a factual basis for Castro-Trevino's guilty plea, the first two prongs of the plain error review are satisfied. In short, contrary to the charge in the indictment to which Castro-Trevino pleaded guilty,[12] the facts are that he *attempted* to export a defense article from the United States to Mexico but did not succeed in doing so; there was no evidence he actually exported[13] or aided and abetted anyone who did so. However, the issue remains whether Castro-Trevino's substantial rights were adversely affected.

---

[11]The Court in *Dominguez Benitez* described the reasons supporting these requirements as follows:
> "First, the standard should enforce the policies that underpin Rule 52(b) generally, to encourage timely objections and reduce wasteful reversals by demanding strenuous exertion to get relief for unpreserved error. Second, it should respect the particular importance of the finality of guilty pleas, which usually rest, after all, on a defendant's profession of guilt in open court, and are indispensable in the operation of the modern criminal justice system. And . . . these reasons are complemented by the fact, worth repeating, that the violation claimed was of Rule 11, not of due process." *Dominguez Benitez*, 124 S.Ct. at 2340 (internal citations omitted).

[12] *See supra* note 1.

[13]The record reflects that Castro-Trevino never left the United States with his intended exports. When a word is not specifically defined within a statute, that term "must therefore be given [its] ordinary and natural meaning. . . . [and] '[d]ictionaries are a principal source for ascertaining the ordinary meaning of statutory language.'" *United States v. Elrawy*, 448 F.3d 309, 312 (5th Cir. 2006) (quoting *United States v. Orellana,* 405 F.3d 360, 365-66 (5th Cir.2005)). Consequently, "Export" is defined as "To carry or send abroad." Black's Law Dictionary 579 (6th ed. 1990). "Abroad" is defined as "In a foreign country or countries." The American Heritage College Dictionary 4 (3d ed. 1997).

The government contends that Castro-Trevino's substantial rights were not affected and he would have entered his plea notwithstanding the Rule 11 error of which he now complains.

## B. Attempted Exportation

While "[t]o attempt a federal offense is not, of itself, a federal crime," and there is no one general federal statute proscribing all attempts to commit federal offenses, see *United States v. York*, 578 F.2d 1036, 1038 (5th Cir. 1978), it is nevertheless clear that attempted exportation without a license of a defense article on United States Munitions List constitutes a federal crime, namely a violation of 22 U.S.C. § 2778(c). Section 2778(c) provides that "[a]ny person who willfully violates any provision of this section or section 2779 of this title, *or any rule or regulation issued under either section* . . . shall upon conviction be fined for each violation . . . or imprisoned not more than ten years, or both" (emphasis added), and 22 C.F.R. § 127.1(a)(1), a regulation issued under 22 U.S.C. § 2778, provides (and at all relevant times provided) that "It is unlawful: (1) To export or *attempt to export* from the United States any defense article . . . for which a license or written approval is required . . . without first obtaining the required license or written approval . . ." (emphasis added). Indeed, we have on at least two occasions affirmed convictions of violating section 2778 by *attempted* exportation of defense articles on the

10

United States Munitions List without a license. *United States v. Covarrubias*, 94 F.3d 172 (5th Cir. 1996); *United States v. Ortiz-Loya*, 777 F.2d 973, 978, 980 (5th Cir. 1985).

Since such attempted exportation contrary to section 2778 *is* a federal crime, it is obvious that it is a lesser included offense of actual exportation contrary to section 2778.  The elements are the same except that the latter offense requires that the defense articles actually leave the United States.[14]  In order to willfully export ammunition in violation of section 2778 one must also attempt to do so; one must willfully attempt to cause with the ammunition to cross the border before succeeding in doing so.  Accordingly, under a charge of exportation contrary to section 2778 a defendant may properly be found guilty of attempting to export contrary to section 2778 under the provisions of Rule 31(c) even though attempt is not alleged in the indictment.[15]  "Under FED. R. CRIM. P. 31(c) a defendant may be found guilty of an attempt to commit a substantive offense, whether or not the attempt was charged in the indictment,

---

[14]See *Covarrubias* at 175: "To sustain a conviction under 22 U.S.C. § 2778, the government must prove beyond a reasonable doubt that the defendant willfully exported or attempted to export defense articles that are on the United States Munitions List without a license."

[15]Rule 31(c) provides:
"**(c) Lesser Offense or Attempt**.  A defendant may be found guilty of any of the following:
    (1) an offense necessarily included in the offense charged;
    (2) an attempt to commit the offense charged; or
    (3) an attempt to commit an offense necessarily included in the offense charged, if the attempt is an offense in its own right."

11

provided an attempt is punishable." *United States v. Marin*, 513 F.2d 974, 976 (2d Cir. 1975). *See also, e.g., United States v. Brozyna*, 571 F.2d 742, 746 (2d Cir. 1978) (conviction on indictment alleging acquisition, though proof showed only attempted acquisition, does not violate defendant's "right to be tried only on charges presented in an indictment" because "Rule 31(c) . . . permits a conviction for attempt even when the indictment charges only the completed act"); *United States v. Pino*, 608 F.2d 1001, 1003 (4th Cir. 1979) (indictment charging distribution of heroin would support conviction "on an attempt theory"); *United States v. Remigio*, 767 F.2d 730, 733 (10th Cir. 1985) ("The crime of attempt is a lesser included offense of the substantive offense" and "proof of the substantive crime at trial was proof of the lesser included offense of attempt"); *United States v. Gaskin*, 364 F.3d 438, 453 (2d Cir. 2004); 2 LaFave, Substantive Criminal Law (2nd Ed) § 11.3(c), at 249 ("The courts are in general agreement that an attempt conviction may be had on a charge of the completed crime . . . ."). We also have so recognized. *See United States v. York*, 578 F.2d 1036, 1040 (5th Cir. 1978) ("attempt is an offense included in the completed crime"). When the facts support conviction of a lesser-included offense we can generally modify the judgment to reflect the

12

lesser offense without detrimentally affecting the defendant's rights.[16]

## C. *Angeles-Mascote* and *Dominguez Benitez*

Both parties call our attention to *United States v. Angeles-Mascote*, 206 F.3d 529 (5th Cir. 2000).  In *Angeles-Mascote*, the defendant was charged with knowingly entering and being found in the United States after deportation, contrary to 8 U.S.C. § 1326.  The defendant pleaded guilty to that charge but argued on appeal the Rule 11 evidence showed that he only attempted entry, and

---

[16]For example, in *Brozyna* the defendant was found guilty by the jury on an indictment charging that she used false identification in "the acquisition of a firearm," but the evidence showed she never acquired the firearm but only attempted to do so.  She moved for judgment of acquittal on this basis.  The indictment did not allege attempt and the district court did not instruct the jury on attempt.  The court reserved decision on the motion until the jury returned its verdict, after which the motion was granted.  On the government's appeal, the Second Circuit reversed and ordered that judgment of guilty be entered in accordance with the verdict.  The Court of Appeals noted that even if the statute, in denouncing the use of false identification in "the acquisition or attempted acquisition" of a firearm, "creates separate offenses, under Rule 31 this defense [that the firearm had not actually been acquired] could not have prevented a conviction for using false identification in connection with an attempted acquisition.  That offense would be subject to the same penalty. . . ."  *Id*. at 746.

*See* 28 U.S.C. § 2106 (providing: "The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."); *United States v. Hunt*, 129 F.3d 739, 744-46 (5th Cir. 1997); *United States v. Bailey*, 691 F.2d 1009, 1019 (11th Cir. 1982) ("Both parties in their respective briefs acknowledge that [defendant] was only convicted of the lesser included offense of simple possession of cocaine on count two.  The Judgment Order reads, 'Defendant has been convicted as charged of the offense(s) of ... possessing with intent to distribute a Schedule II controlled substance (sic). . . .' This is plain error of which this court may take cognizance. On remand, the district court is instructed to reform the Judgment Order to record accurately the offenses for which [defendant] was convicted.") (internal citations omitted).

could not have been "found in" the United States since he never actually entered. *Id.* at 531. Under plain error review, this court vacated the guilty plea because the evidence was insufficient to show that the defendant had actually entered:

> "The appropriate indictment . . . would have been to charge [defendant] with attempting to enter the United States after previously being deported . . . there is a clear distinction between actual entry into the United States, and attempted entry. [citation] That distinction being that 'actual entry' has been found by most courts to require both physical presence in the country as well as freedom from official restraint, while 'attempted entry' only requires that the person approach a port of entry and make a false claim of citizenship or non-resident alien status." *Id.*

This court held that the government's failure to charge the correct offense in the indictment could not be harmless since "[a]n indictment is intended to provide notice to the defendant that allows him to intelligently consider his defense or plea." *Id.* at 532. This court also found "unpersuasive" the government's argument that "even if the factual basis is insufficient none of [the defendant's] substantial rights were affected because a charge of attempted entry provides for the same statutory maximum sentence as a charge of actual entry." *Id.*

It is not clear that the *Angeles-Mascote* panel regarded "attempted entry" as a lesser included offense of the charged section 1326 offense, as the panel apparently viewed the attempted entry offense as requiring the making of "a false claim of citizenship or non-resident alien status." *Id.* at 531. In

14

any event, *Angeles-Mascote* was decided without the benefit of the

Supreme Court's decisions in *Vonn*[17] and *Dominguez Benitez*,[18] and

necessarily must be construed in light of those cases.  Indeed,

the Supreme Court in *Dominguez Benitez* stresses:

> "[T]he point . . . is not to second-guess a defendant's
> actual decision [to plead guilty]; if it is reasonably
> probable he would have gone to trial absent the error,
> it is no matter that the choice may have been foolish.
> The point, rather, is to enquire whether the omitted
> [Rule 11 procedure] would have made the difference
> required by the standard of reasonable probability."
> *Dominguez Benitez*, 124 S.Ct. at 2341.

*Dominguez Benitez* holds further:

> "[A] defendant who seeks reversal of his conviction after
> a guilty plea, on the ground that the district court
> committed plain error under Rule 11, must show a
> reasonable probability that, but for the error, he would
> not have entered the plea.  A defendant must thus satisfy
> the judgment of the reviewing court, informed by the
> entire record, that the probability of a different result
> is 'sufficient to undermine confidence in the outcome' of
> the proceeding." *Id.* at 2340 (internal citations
> omitted).

*Dominguez Benitez* necessarily modifies our reasoning in *Angeles-*

*Mascote* by increasing the burden for defendants in situations

similar to Castro-Trevino's.  As such, Castro-Trevino must

demonstrate both that his substantial rights were adversely

---

[17]*Vonn*, 122 S.Ct at 1046 (holding that "a silent defendant has the burden to satisfy the plain-error rule and that a reviewing court may consult the whole record when considering the effect of any error on substantial rights.")

[18]*Dominguez Benitez*, 124 S.Ct. at 2336 (holding that "a defendant is obliged to show a reasonable probability that, but for the error, he would not have entered the [guilty] plea.")

15

affected and that he would not have entered his guilty plea but for the error.

## D. Conviction of Lesser-Included Offense Does Not Affect Castro-Trevino's Substantial Rights

As noted, a conviction for an attempt to commit the completed offense charged (or a conviction for some other lesser included offense of that charged), may properly be based on an indictment which alleges only the completed offense and does not mention attempt (or other lesser included offense of that charged). As stated in *United States v. Thompson*, 680 F.2d 1145, 1155 (7th Cir. 1982):

> "The purpose of requiring a factual basis for a plea as now stated in Rule 11(f) and as included in the 1966 amendment to the Rules is to assure the court that the conduct which the defendant admits by his plea of guilty constitutes the offense charged in the indictment or a lesser offense included therein."

Here, during the Rearraignment, the Rule 11 hearing transcript describes the following exchange, with appellant (a college graduate engineer) under oath (under penalty of perjury):

> U.S. Attorney: "The facts would show, Your Honor, that on December 15th, 2004, Customs and Border Protection officers observed the Defendant purchase a large amount of assorted ammunition at a Wal-Mart store in Brownsville, Texas. Agents conducted surveillance as the *Defendant attempted to export the ammunition out of the United States to Mexico through the Gateway port of entry, Brownsville, Texas.* Further inspection fo the Defendant's car revealed three Wal-Mart bags hidden underneath a blanket that contained a total of 11,500 rounds of assorted ammunition. The ammunition is an article that is listed on the United States munitions list. *The Defendant attempted to export the ammunition without obtaining a license.* The Defendant acted

16

willfully in exporting the ammunition. The Defendant stated that he knew it was illegal to export the ammunition because he had seen the sign at the bridge where it said that it's illegal to cross firearms and ammunition to Mexico."

The Court: "Is that what happened, sir?"

Castro-Trevino: "Yes, sir."

The Court: "I'm going to recommend that your plea be accepted." (emphasis added).

Plainly, the Rule 11 hearing reflects appellant's guilt of the offense of attempted exportation contrary to section 2778(c).

**E.   Failure to Allege 22 C.F.R. § 127.1**.

Castro-Trevino contends that because 22 C.F.R. § 127.1 was omitted from the indictment it cannot be used to show that attempt to export is a lesser-included offense and renders the indictment deficient to support a conviction on that basis. However, we conclude that the fact that 22 C.F.R. § 127.1 was not cited in the indictment as one of the regulations violated by Castro-Trevino's conduct is not a sufficient cause for us to vacate his guilty plea.  Rule 7(c)(3) of the Federal Rules of Criminal Procedure provides:

> "Unless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction."

*See, e.g., United States v. Boyett*, 923 F.2d 378, 378–79 n. 1 (5th Cir. 1990) (conviction not reversed where indictment cited incorrect statute, because "[t]he error was not one that could

17

have reasonably misled the defendant to his prejudice"); *Schmidt v. United States*, 286 F.2d 11, 12 (5th Cir. 1961) (finding that judgment could not be vacated simply because the indictment referred to the wrong subsection of the offense statute where "[a]ppellant was represented by counsel and the indictment adequately and positively alleged facts constituting a crime under the offense statute.... Under these circumstances it is highly doubtful that [defendant] was misled at all.").[19] Castro-Trevino makes no allegations that he was misled to his prejudice in this respect nor is any such prejudice apparent. Consequently, omission of the regulatory provision's citation by itself is not a sufficient basis on which to vacate Castro-Trevino's guilty plea.

## F. Sentencing Considerations did not Violate Castro-Trevino's Substantial Rights

Castro-Trevino also argues that his substantial rights were adversely affected because had the charge read "attempted exportation" he would have been eligible for a lower sentence.

---

[19]This court has also stated that "[p]ractical rather than technical considerations govern resolution of [indictment] challenges and we will not reverse for minor deficiencies which do not prejudice the accused." *United States v. Steen,* 55 F.3d 1022, 1027 (5th Cir. 1995) (citing *United States v. Chappell,* 6 F.3d 1095, 1099 (5th Cir. 1993) ("An indictment need only charge the essential elements of the offense, permitting the accused to prepare a defense . . . ."). *See also United States v. Nevers*, 7 F.3d 59, 63 (5th Cir.1993) (indictment sufficient if it "describe[s] the specific facts and circumstances surrounding the offense in question in such manner as to inform the defendant of the particular offense charged"); *United States v. Shelton*, 937 F.2d 140, 142 (5th Cir. 1991) ("An indictment is sufficient if it contains the elements of the offense charged [and] fairly informs the defendant what charge he must be prepared to meet . . . .").

18

We conclude, however, that there was no potential effect on sentencing. The same statutory range is applicable. Section 2778(c). See note 2 *supra*. He asserts that he may have been eligible for a three-level reduction under U.S.S.G. § 2X1.1, entitled "Attempt, Solicitation, or Conspiracy (Not Covered by a Specific Offense Guideline)", because it was only an attempt to carry out the prohibited behavior. However, the government argues that U.S.S.G. § 2X1.1(b)(1) does not, and would not, apply to Castro-Trevino's case for two distinct reasons: (a) this provision only applies to attempts which are not included within the offense guideline; and (b) attempts do not warrant a three-level reduction when "defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control." U.S.S.G. § 2X1.1(b)(1).

First, the government contends that § 2M5.2 includes attempts to commit a violation of 22 U.S.C. §2778(c) since it covers the entire offense, which by its terms includes all the regulations issued thereunder. As discussed *supra*, 22 C.F.R § 127.1(a)(1), issued under 22 U.S.C. § 2778(a), provides: "It is unlawful to export *or attempt to export* from the United States any defense article . . . for which a license or written approval is required . . . ." Therefore, it is contended, § 2X1.1 does not apply to this offense because the attempt is already included within the ambit of § 2M5.2 since it is, by way of 22 C.F.R.

19

§127.1, a primary violation of the statute dealt with by § 2M5.2. We need not resolve this contention, because we agree with the government's second contention, namely that the sole reason Castro-Trevino was not able to export the ammunition was due to his apprehension by ICE agents at the border. His voluntary confession did not cause his apprehension or interruption of the event because ICE agents had been monitoring his purchases that day. Thus, under § 2X1.1(b)(1) the three level reduction is not available.

Additionally, contrary to Castro-Trevino's assertions, U.S.S.G. § 2X1.1(b)(2) does not apply because the indictment does not allege conspiracy and conspiracy is not a lesser-included offense of the offense charged.[20]

Finally, Castro-Trevino received the lowest sentence within the applicable guideline range and the statutory range remains the same. There is no indication here that Castro-Trevino was prejudiced by receiving a longer sentence than he would have had the charge expressly and only been for attempted exportation or that he was denied any real opportunity to receive a shorter sentence.

## Conclusion

---

[20]*See* 18 U.S.C. § 371. Conspiracy to commit the act prohibited by section 2778 requires the additional element of agreement between "two or more persons" whereas 22 U.S.C. §2778 applies to "any person." "[A] conspiracy conviction may not be obtained on a charge of the completed crime." 2 LaFave, Substantive Criminal Law (2nd Ed) § 12.4(d) at 322; *Braverman v. United States*, 63 S.Ct. 99 (1942).

Castro-Trevino has failed to demonstrate that but for the Rule 11 error, he would not have entered his guilty plea, as required by *Dominguez Benitez*.  The same statutory and guideline sentencing range applied.  There is no indication he would have received a reduced sentence, the indictment gave sufficient notice as to the charges pending against him, and the factual record accepted by both parties and relied upon by both the district court and the magistrate judge indicated the full nature of his offense.  In short, after reviewing the record and Castro-Trevino's arguments, we are not satisfied that "the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding." *Dominguez Benitez*, 124 S.Ct. at 2340.  Our confidence in the proceeding's outcome is simply not undermined here.  Castro-Trevino has admitted under oath that he attempted to export ammunition in violation of the law, voluntarily pleaded guilty to that prohibited behavior, and had every opportunity in the court below to raise the points he brings up for the first time on appeal.

Consequently, this court modifies the judgment in accordance with this opinion to reflect conviction for attempted exportation of ammunition rather than the completed offense, and affirms the judgment as so modified.

For the foregoing reasons, the judgment of the district court is

21

AFFIRMED

as modified.