# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 9, 2010

No. 08-51160
Summary Calendar

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

ANDREW MAXWELL PARKER,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:08-CR-292-1

Before JOLLY, WIENER, and ELROD, Circuit Judges.

PER CURIAM:[*]

Andrew Maxwell Parker pleaded guilty to counts 1, 3, 4, 5, 19, 21, 22, 25, 26, 27, and 28 of an indictment charging him with conspiracy, wire fraud, money laundering, tax evasion, filing a false income tax return, and aiding and abetting related to various fraudulent loans guaranteed by the United States Export-Import Bank (Ex-Im Bank). In this appeal, Parker contends that his guilty pleas to the conspiracy, wire fraud, and money laundering counts should be vacated the factual bases for his pleas failed to establish essential elements of the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

offenses.   Under FED. R. CRIM. P. 11(b)(3), the district court is required to determine that there is a factual basis for a plea.  "The factual basis for the guilty plea must appear in the record and must be sufficiently specific to allow the court to determine that the defendant's conduct was within the ambit of that defined as criminal." *United States v. Castro-Trevino*, 464 F.3d 536, 540 (5th Cir. 2006) (quotation marks and ellipsis omitted).

Parker concedes that this court's review is for plain error because no objection was lodged in the district court.  *See id* at 541.  To show plain error, Parker must show a forfeited error that is clear or obvious and that affects his substantial rights. *Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009).  If he makes such a showing, this court has the discretion to correct the error but only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*  Parker "'must show a reasonable probability that, but for the error, he would not have entered the plea.'"  *Castro-Trevino*, 464 F.3d at 541 (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004)).

### Conspiracy count

Under 18 U.S.C. § 371, it is unlawful for two or more persons to "conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose."  "The defraud clause of § 371 reaches both a conspiracy to cheat the government out of property or money and any conspiracy designed to impair, obstruct, or defeat the lawful function of any department of the government." *United States v. Clark*, 139 F.3d 485, 488-89 (5th Cir. 1998).   At least one of the conspirators must have committed an overt act in furtherance of the objectives of the conspiracy. *Id*. at 489.

Parker contends that he should be permitted to withdraw his guilty plea to the conspiracy count because the allegations in the indictment, the factual basis for the plea agreement, and the plea colloquy do not demonstrate that he entered into a conspiratorial agreement with others to commit offenses against

the United States or to defraud the Ex-Im Bank. Although Parker concedes that the indictment alleged that he conspired with others, he argues that "the record is devoid of any information as to whom these 'others' might be—whether employees of lender banks, employees at the Ex-Im Bank, or his employees." Parker complains that the record does not "provide any information as to whether it was Mr. Parker—or others—who engaged in the conduct described in the 'Manner and Means' section" of the conspiracy count. Parker contends that it cannot be determined whether he personally engaged in the conduct or whether he was merely responsible for the conduct of others. Parker contends that "the record fails to show what facts support a finding that [he] engaged in a conspiratorial agreement, or whether he was, in some manner, acting alone." These contentions are without merit.

Proof of the identity of the co-conspirators was not necessary. *See Rogers v. United States*, 340 U.S. 367, 375 (1951); *United States v. Lewis*, 902 F.2d 1176, 1181 n.4 (5th Cir. 1990). In this case, one co-conspirator, Victor Garate, was specifically identified in the factual basis for the guilty plea, and Parker admitted that he wired fraudulently obtained funds into accounts controlled by Garate and that Garate helped Parker to launder those funds. We have reviewed the indictment, the factual basis for the guilty plea, and the transcript of the rearraignment hearing and have found an abundance of factual support in the record for the district court's acceptance of Parker's guilty plea to conspiring with others to defraud the United States and to commit wire fraud and money laundering. No error is apparent, plain or otherwise. *See Puckett*, 129 S. Ct. at 1429; *Castro-Trevino*, 464 F.3d at 540-41.

### *Wire fraud counts*

Parker contends that he should be permitted to withdraw his guilty pleas to the wire fraud counts (counts 3, 4, and 5) because the allegations in the indictment, the factual basis for the plea agreement, and the plea colloquy do not demonstrate that he engaged in a scheme to defraud and that he used or caused

the use of wire communications in furtherance of such a scheme. Parker complains that the "wire fraud counts suffer from the same lack of detail in the particulars as discussed" in connection with the conspiracy count. Parker contends that the question whether Parker devised a scheme to defraud the Ex-Im Bank cannot be determined based on the record. Parker contends also that the record shows "no more than that he converted loan proceeds wired to him by lending institutions" and that "broad and vague assertions in Count I" were not sufficient support a finding that he "devised a scheme to defraud the Ex-Im Bank." These contentions are without merit.

"To prove wire fraud pursuant to 18 U.S.C. § 1343, the government must prove (1) a scheme to defraud and (2) the use of, or causing the use of, wire communications in furtherance of the scheme." *United States v. Gray*, 96 F.3d 769, 773 (5th Cir. 1996). "[F]or purposes of the federal fraud statutes, the term 'scheme to defraud' is not readily defined, but it includes any false or fraudulent pretenses or representations intended to deceive others in order to obtain something of value, such as money." *United States v. Caldwell*, 302 F.3d 399, 414 (5th Cir. 2002) (quotation marks and brackets omitted). "The requisite intent to defraud is established if the defendant acted knowingly and with the specific intent to deceive, ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain to himself." *United States v. Saks*, 964 F.2d 1514, 1518 (5th Cir. 1992).

The record supports the district court's determination, in accepting Parker's guilty pleas to counts 3, 4, and 5, that Parker had engaged in schemes to defraud involving the use of wire communications by causing funds generated by three sham transactions to be wired into his bank account. *See* § 1343; *Gray*, 96 F.3d at 773. The record supports the district court's conclusion that Parker engaged in a scheme to defraud by knowingly using false or fraudulent pretenses or representations to deceive others in order to obtain the wired funds, and that he aided and abetted others in doing so. *See Caldwell*, 302 F.3d at 414. The

district court's acceptance of the guilty pleas with respect to the wire fraud counts did not involve reversible plain error. *See Puckett*, 129 S. Ct. at 1429.

*Money laundering counts*

Parker contends that he should be permitted to withdraw his guilty pleas to the money laundering counts (counts 19, 21, and 22) because the allegations in the indictment, the factual basis for the plea agreement, and the plea colloquy do not demonstrate that funds paid out of bank accounts controlled by Garate were criminally derived from the conspiracy and wire fraud schemes and that his relationship to those accounts was not established. Parker complains that the facts in the record underlying his guilty pleas to money laundering lack sufficient detail with respect to Garate's role. As to counts 21 and 22, Parker argues that the record does not reflect that Parker transferred criminally derived funds into Garate's account and that he used those funds to complete the monetary transactions involved in those counts. Although Parker concedes that the factual basis recites that he knew that more than $10,000 of funds transferred were derived from the conspiracy wire fraud scheme, he argues that the basis for that knowledge was not established. Parker argues that he and Garate engaged in many legitimate transactions and that the record does not distinguish between untainted and tainted funds in Garate's accounts. Parker complains that the elements of the offense were not explained to him and that he pleaded guilty with only a generalized knowledge of the nature of the money laundering charges. These contentions are without merit.

To prove that Parker engaged in money laundering under 18 U.S.C. § 1957, the Government had to show that Parker "engaged in a monetary transaction in criminally derived property of a value greater than $10,000 and that the property was derived from specified unlawful activity." *United States v. Freeman*, 434 F.3d 369, 377 (5th Cir. 2005); *see also United States v. Fuchs*, 467 F.3d 889, 907 (5th Cir. 2006). A "monetary transaction" is a "deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce,

of funds or a monetary instrument . . . by, through, or to a financial institution." § 1957(f)(1). "Criminally derived property" is "any property constituting, or derived from, proceeds obtained from a criminal offense." § 1957(f)(2).

The allegations in the indictment track the statute and contain all of the elements of the offense. *See* § 1957(a). In accepting Parker's guilty plea to the money laundering counts, the district court asked Parker whether he "engaged in the federal felony of transferring money which had been criminally derived." The factual basis recites that Parker caused Garate to conduct monetary transactions on his behalf "knowing that the money being used was that which was criminally derived." Apart from counsel's assertion that Parker had engaged in legitimate transactions, there is nothing in the record to indicate that the tainted funds involved in the money laundering accounts were co-mingled with funds related to legitimate transactions. Parker did not object that the aggregate amounts withdrawn from Garate's accounts did not exceed the clean funds in those accounts. *See United States* v. *Davis*, 226 F.3d 346, 357 (5th Cir. 2000); *see also Puckett*, 129 S. Ct. at 1431-32 (requiring defendant to object to error in district court prevents defendant from "'gam[ing]' the system" and gives district court opportunity to adjudicate matter in first instance and to develop factual record, facilitating appellate review). Although the district court arguably should have explained the elements of the offense more clearly and should have conducted a more thorough inquiry into the tainted nature of the transferred funds, any error in failing to do so was not clear or obvious. *See Puckett*, 129 S. Ct. at 1429.

Moreover, assuming that the district court committed clear error, Parker has not shown that his substantial rights were affected, that is, he has not shown that, but for the error, there is a reasonable probability that he would not have entered his guilty plea. *See Castro-Trevino*, 464 F.3d at 541. Nor is this a case in which we would exercise our discretion to correct plain error. *See Puckett*, 129 S. Ct. at 1429. Parker's fraudulent scheme was audacious and

systematic and resulted in a loss to the Government exceeding $100 million.  The theoretical maximum sentence was 50 or 60 years in prison.  The plea agreement capped Parker's total imprisonment at 10 years and limited the restitution order to $10 million.  Thus, Parker benefitted greatly from the plea agreement.  Parker was well represented by private counsel and was able to secure a favorable plea agreement because of the difficulties associated with presenting a complex case to a lay jury.  Although lacking in formal education, Parker was a sophisticated businessman.  The record reflects that his guilty pleas were knowing and voluntary.  The judgment is

AFFIRMED.