# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
December 13, 2023

Lyle W. Cayce
Clerk

No. 22-10803

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

BRIAN JACKSON,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:22-CR-38-2

_____

Before HIGGINBOTHAM, HIGGINSON, and DUNCAN, *Circuit Judges*.
STUART KYLE DUNCAN, *Circuit Judge*:

After attempting to rob a convenience store with two accomplices, Appellant Brian Jackson pled guilty of attempted interference with commerce by robbery in violation 18 U.S.C. § 1951(a). He now challenges the district court's finding that sufficient evidence supported his plea, arguing the record fails to show the attempted robbery impacted interstate commerce. Finding no reversible error, we AFFIRM.

No. 22-10803

## I.

Jackson agreed to the following stipulated facts. On or about October 12, 2021, he and two co-conspirators attempted to rob the Welcome Food Store in Fort Worth, Texas. Co-conspirator Leonard Lindsey Douglas, driving a 2013 Ford Taurus, pulled into the drive-thru window and asked for items that required the employee to leave the secure area behind the counter. Once the employee left the secure area, Jackson and co-conspirator James Earl Lemons entered the store. They dragged the employee to the back of the store toward the cash register, striking him twice in the head or neck area. Before they completed the robbery, however, they suddenly fled in a 2009 white Chevy Impala. The Taurus also fled the scene.

The Fort Worth Police Department had been surveilling the subjects that night and on prior occasions because they were suspects in several robberies in the area. After the attempted robbery, officers stopped the Taurus and arrested Lindsey for aggravated robbery. While pursuing Jackson in the Impala, officers observed someone toss an AR-15 style rifle out of the driver's side window, which they collected as evidence. As the pursuit continued, Jackson, the driver, bailed from the still-moving vehicle and fled on foot. He was quickly arrested.

The police investigation of this incident caused the Welcome Food Store to shut down for about three hours. As a result, the store claimed (and Jackson does not contest) a loss of $600.00 in missed earnings.

In his plea agreement, Jackson agreed that he "committed all the essential elements of the offense." Specifically, he agreed he "unlawfully attempt[ed] to obstruct, delay, and affect commerce, as that term is defined in 18 U.S.C. § 1951, and the movement of articles and commodities in such commerce, by robbery, as that term is defined in 18 U.S.C. § 1951." He also admitted he sought to "obtain personal property, consisting of U.S. currency

from the person and in the presence of an employee of Welcome Food Store . . . against his/her will by means of actual and threatened force, violence, fear of immediate injury to her person." He further agreed that this factual resume was "not intended to be a complete accounting of all the facts and events related to the offense charged in this case."

In exchange for his plea, the Government (1) dismissed a second charge for which Jackson had been indicted (interference with commerce by robbery in violation of 18 U.S.C. § 1951(a)) and (2) agreed not to bring any additional charges based on the conduct underlying his plea. Before his sentencing hearing, Jackson moved to withdraw his plea, arguing he pled guilty only to avoid multiple 18 U.S.C. § 924(c) charges and that "there is at least one element of the offense that the Government would not be able to prove." He quickly withdrew the motion, however, stating that "he got a little spooked as his sentencing was getting close, but he wishe[d] to go forward with his guilty plea."

The district court found Jackson's plea was supported by sufficient evidence. Varying upwards, the court imposed a 120-month prison sentence due to Jackson's prior commission of "another robbery, even while wearing an electronic monitor for supervision." The court subsequently overruled Jackson's objection to the sentence as unreasonable. This appeal followed.

## II.

Jackson concedes he failed to preserve claims regarding the sufficiency of the factual basis for his plea. We therefore review for plain error. *United States v. Cooper*, 979 F.3d 1084, 1090 (5th Cir. 2020). Accordingly, Jackson must show "a forfeited error that is clear or obvious and that affects his substantial rights." *Ibid.* (citations omitted). If he meets this bar, "we may, in our discretion, correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Ibid.*

No. 22-10803

"An error is plain, in this context, if it is 'clear or obvious' what the government must prove to establish the offense, and, notwithstanding that clarity, the district court accepts a defendant's guilty plea without an adequate factual basis." *United State v. Alvarado-Casas*, 715 F.3d 945, 951 (5th Cir. 2013) (citation omitted). A district court's acceptance of a guilty plea "is not clearly erroneous as long as it is plausible in light of the record as a whole." *United States v. Hildebrand*, 527 F.3d 466, 475 (5th Cir. 2008) (citation omitted).

In determining factual sufficiency, we consider all facts available to the district court and any reasonable inferences drawn from those facts, including "the indictment itself, evidence available at the plea hearing, evidence 'adduced after the acceptance of a guilty plea but before or at sentencing,' the pre-sentencing report, *et cetera*." *Cooper*, 979 F.3d at 1090 (quoting *Hildebrand*, 527 F.3d at 475); *see also United States v. Barton*, 879 F.3d 595, 599 (5th Cir. 2018).

## III.

The Hobbs Act penalizes "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery" as well as anyone who "attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section." 18 U.S.C. § 1951(a). Accordingly, a violation requires (1) robbery, extortion, or an attempt or conspiracy to rob or extort (2) that affects interstate commerce. *United State v. Robinson*, 119 F.3d 1205, 1212 (5th Cir. 1997).

To trigger the Hobbs Act, a business's activities need have only a slight effect on interstate commerce. For example, a business might merely

No. 22-10803

purchase or use out-of-state goods or services.[1] Similarly, a crime's impact on interstate commerce need only be minimal. *United States v. Avalos-Sanchez*, 975 F.3d 436, 440–41 (5th Cir. 2020) (citing *Taylor v. United States*, 579 U.S. 301, 309 (2016)); *Robinson*, 119 F.3d at 1212. To determine a crime's impact on interstate commerce, we look to whether "the cumulative effect of all similar instances . . . is substantial." *Robinson*, 119 F.3d at 1214. The crime qualifies under the Hobbs Act when it merely "depletes the assets of a commercial enterprise, impairing or delaying its ability to buy goods or services in interstate commerce." *Robinson*, 119 F.3d at 1212.

With this background in mind, we turn to Jackson's contentions.

## A.

Jackson argues that a "defendant's unadorned and conclusory recitation that he committed the legal elements of the offense will not suffice to sustain his conviction." *See United States v. Jones*, 969 F.3d 192, 196 (5th Cir. 2020). His guilty plea, he claims, contains only such conclusory recitations and no facts to support the interstate commerce prong under the Hobbs Act. We disagree.

Jackson's plea agreement went beyond merely agreeing that he "committed all the essential elements of the offense." Jackson admitted in the factual resume that he attempted to rob the Welcome Food Store and to obstruct commerce (as defined in 18 U.S.C. § 1951), including the movement

---

[1] *See Stirone v. United States*, 361 U.S. 212, 215 (1960) (finding sufficient a concrete business's use of out-of-state shipments of sand); *United States v. Chiantese*, 582 F.2d 974, 980 n.16 (5th Cir. 1978) (finding sufficient a parking lot operator's out-of-state purchase of employee apparel, gas purchases with credit cards issued by out-of-state companies, purchase of out-of-state insurance, and regular parking of out-of-state automobiles); *United States v. Sander*, 615 F.2d 215, 218 (5th Cir. 1980) (finding sufficient "an on-going business" that had engaged in interstate commerce in the past, and that "it is realistic to assume . . . would continue to conduct business on an interstate basis" in the future).

of articles and commodities, by taking U.S. currency. He also agreed the resume was "not intended to be a complete accounting of all the facts and events related to the offense charged in this case." We have previously found such factual admissions sufficient to satisfy the Hobbs Act's commerce element. *See, e.g.*, *Avalos-Sanchez*, 975 F.3d at 441 (holding a defendant's "admissions at re-arraignment, standing alone, support his conviction under the Hobbs Act"); *United States v. Clark*, 818 F. App'x 326, 329 (5th Cir. 2020) (holding that a stipulation that defendant affected interstate commerce was sufficient to meet the commerce element).

Because Jackson undisputedly attempted to rob the Welcome Food Store with the intent to affect interstate commerce, the Government has established the necessary facts underlying his Hobbs Act plea. *See Avalos-Sanchez*, 975 F.3d at 441–42 ("When robberies were committed with the *express intent* to [commit the crime] this is sufficient to meet the commerce element of the Hobbs Act.") (internal quotation marks omitted)).

B.

Even if Jackson's admissions, standing alone, were insufficient, his causing the temporary closure of the Welcome Food Store meets the commerce element because it reduced the store's assets by $600, thus impeding its ability to engage in future interstate commerce.

Jackson argues the Government alleged no fact that "suggests any impact on interstate commerce" because nothing indicates that the store "operated in multiple states, engaged in interstate transactions, served out-of-state customers or sold goods from out of state." We disagree.

We have repeatedly found that robberies that cause "the interruption of commerce" involving out-of-state goods affect interstate commerce for purposes of the Hobbs Act. *United States v. Davis*, 30 F.3d 613, 615 (5th Cir. 1994) (robberies causing temporary closure of gas stations dealing in out-of-

state goods affected interstate commerce); *United States v. Martinez*, 28 F.3d 444, 445 (5th Cir. 1994) (same); *United States v. Richard*, 9 F.3d 102, 102 (5th Cir. 1993) (robbery causing temporary closure and purchase of new cash register manufactured overseas affected interstate commerce). Such temporary closures "deplete the assets of an entity engaged in interstate commerce," which satisfies the commerce prong. *Collins*, 40 F.3d at 99–100.

Jackson admitted that the Welcome Food Store was shut down for three hours due to his attempted robbery and that it lost $600 in potential earnings while closed.[2] Jackson's acts therefore "impair[ed] [the store's] ability to buy goods or services in interstate commerce." *Robinson*, 119 F.3d at 1212 (citations omitted). In the aggregate, attempted robberies of this nature would substantially affect interstate commerce by causing businesses to close during operating hours, reducing their profits, and reducing their ability to purchase goods. Given the interconnected nature of the United States economy, we can draw the "fair inference" from the record evidence that the Welcome Food Store dealt (at least in part) in goods grown, manufactured, packaged, or shipped from somewhere outside of Texas. *See United States v. Hyde*, 448 F.2d 815, 834 (5th Cir. 1971) (relying on fair inferences from the record in a Hobbs Act extortion case); *United States v. Bird*, 124 F.3d 667, 681 (5th Cir. 1997) (relying on fair inferences to find that interference with local activities affects the national market).

As the Government points out, it is common sense that "many of the foods, beverages, and products" in a convenience store "engaged with interstate commerce at one point or another." Jackson provides no evidence suggesting that the Welcome Food Store dealt exclusively in Texas-only

—————————————————

[2] Jackson argues that he committed crimes only against the store employee and, therefore, there was no effect on interstate commerce. We disagree. Jackson admitted to attempting to rob the store itself by dragging the employee towards the cash register.

goods, and it is his burden to show that the district court's assumption that the Welcome Food Store dealt in at least some out-of-state goods was plain error. *United States v. Castro-Trevino*, 464 F.3d 536, 541 (5th Cir. 2006); *Clark*, 818 F. App'x at 329 (finding defendant failed to demonstrate factual insufficiency because he "point[ed] to no evidence that his crime lacked a 'minimal effect on interstate commerce'").

Accordingly, Jackson fails to show any error, plain or otherwise. *See United States v. Broussard*, 669 F.3d 537, 550 (5th Cir. 2012).

## C.

Finally, even assuming the record lacked sufficient evidence of an effect on interstate commerce, Jackson would still have to show this error affected his substantial rights. *See Castro-Trevino*, 464 F.3d at 541. He cannot.

Jackson argues that, had he known the facts were insufficient under the commerce element, he would not have pled guilty. This argument is belied by Jackson's own pleadings. In his motion to withdraw his guilty plea, he argued that his actions "did not affect interstate commerce" and that "there is at least one element of the offense that the Government would not be able to prove." But Jackson then withdrew this motion and stood by his guilty plea. The record thus shows that, despite believing that the facts were insufficient to support the commerce prong, he nonetheless pled guilty.

Jackson also admitted that his purpose in pleading guilty of the Hobbs Act violation was to avoid the Government's pursuing a potential conviction under 18 U.S.C. § 924(c), which carries longer sentences. So, even if we ignore the fact that Jackson pled guilty with full knowledge of the alleged factual insufficiencies, it is highly unlikely that he would have risked the harsher § 924(c) charges. Jackson thus fails to demonstrate that any potential error affected his substantial rights.

No. 22-10803

AFFIRMED.