# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-10228

United States Court of Appeals
Fifth Circuit

**FILED**
June 27, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ROGER NEPAL,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before WIENER, GRAVES, and HO, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

Following a plea agreement, Defendant Roger Nepal, who was born in Nepal but later became a naturalized U.S. citizen, pleaded guilty to and was convicted of a single count of violating 18 U.S.C. § 1425(a), which prohibits knowingly procuring citizenship contrary to law. The factual resume accompanying the plea agreement details how in both his Application for Naturalization and his subsequent citizenship interview, Nepal falsely stated that he had no children when, in fact, he did. The factual resume also states that had immigration officials known that Nepal had children, it would have led to the discovery that Nepal did not properly and completely provide financial support to his son. The district court accepted the plea agreement, convicted Nepal of violating Section 1425(a) and, as part of his sentence, revoked his citizenship. Nepal appeals.

While the appeal was pending, the Supreme Court announced its decision in *Maslenjak v. United States*, 582 U.S. —, 137 S. Ct. 1918 (2017), in which it (1) clarified the Government's burden of proof in a Section 1425(a) prosecution and (2) held that qualification for citizenship, notwithstanding any materially false statement, is a complete defense to prosecution. Nepal contends that *Maslenjak* effected a change in the law such that the district court plainly erred in accepting his guilty plea because, following *Maslenjak*, that plea is no longer supported by a sufficient factual basis. He also contends that he is entitled to invoke the newly announced defense.

Both contentions lack merit. We affirm.

**I**

In 2015, a grand jury issued a three-count indictment against Nepal.[1] He was charged with conspiracy to commit fraud in connection with immigration documents, in violation of 18 U.S.C. §§ 371 & 1546(a) (Count One); fraud and misuse of visas, permits, and other documents, in violation of 18 U.S.C. § 1546(a) (Count Two); and unlawful procurement of naturalization, in violation of 18 U.S.C. § 1425(a) (Count Three). The statutory provision at issue in Count Three, Section 1425(a), prohibits "knowingly procur[ing] or attempt[ing] to procure, contrary to law, the naturalization of any person." 18 U.S.C. § 1425(a). For present purposes, the indictment advanced three relevant allegations. First, Nepal filed a Form N-400 Application for Naturalization with the then-extant Immigration and Naturalization Service in December 2001, falsely claiming, *inter alia*, that he did not have children, when in fact he had four children—contrary to 18 U.S.C. § 1015(a), which prohibits false statements "relating to . . . naturalization." Second, Nepal lied in his July 2005 naturalization interview with the

---

[1] Some charges were brought against two other defendants, as well, detailing a scheme to fraudulently obtain citizenship on behalf of others. Those defendants entered guilty pleas prior to trial and are irrelevant to this appeal.

Bureau of Citizenship and Immigration Services when he again denied having any children—again contrary to 18 U.S.C. § 1015(a). And third, the production of truthful information about Nepal's children "would have led to the discovery of facts relevant to the Application for Naturalization and his statutory ineligibility for naturalization."

The case went to trial in September 2016. After three days, Nepal agreed to plead guilty to Count Three, and the Government agreed to dismiss the other two counts. The parties prepared a plea agreement. In the factual resume accompanying that agreement, Nepal admitted that he lied by failing to list his son, Ashwin Dahal, on his N-400 application and that he lied during his naturalization interview by denying that he had any children. He further admitted that "the production of truthful information" about his son "would have led to the discovery of facts relevant to the Application for Naturalization and his statutory ineligibility due to lacking the good moral character during the statutory time period for naturalization." Specifically on that point, Nepal admitted that "it would have led to the discovery of the fact that he had not been properly and completely providing financial support for Ashwin Dahal." He admitted that this course of conduct violated Section 1425(a).

At the change of plea hearing, Nepal acknowledged that he understood the factual resume's contents and that he signed the factual resume. He did not object to the factual basis of his plea. The district court found that Nepal was competent and capable of entering into an informed plea, and that his plea was knowing and voluntary. The court accepted the plea agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C); convicted him of violating Section 1425(a); sentenced him to the agreed-upon term of 366 days' imprisonment; ordered him to pay $200,000 restitution; and, pursuant to 8 U.S.C. § 1451,[2]

---

[2] "When a person shall be convicted under section 1425 of Title 18 of knowingly procuring naturalization in violation of law, the court in which such conviction is had shall thereupon

declared that "as of today . . .  [Nepal's] citizenship is revoked." Nepal timely appealed, and we have jurisdiction. *See* 28 U.S.C. § 1291; 18 U.S.C. § 3742(a).

## II

"We review guilty pleas for compliance with Rule 11," *United States v. Garcia-Paulin*, 627 F.3d 127, 130 (5th Cir. 2010), a rule designed to "ensure that a guilty plea is knowing and voluntary, by laying out the steps a trial judge must take before accepting such a plea," *United States v. Vonn*, 535 U.S. 55, 58 (2002). "One such step is determining that a defendant's guilty plea is supported by an adequate factual basis."[3] *United States v. Alvarado-Casas*, 715 F.3d 945, 949 (5th Cir. 2013). The district court makes this determination by following Rule 11(b)(3), which instructs it to "make certain that the ***factual*** conduct admitted by the defendant is sufficient as a ***matter of law*** to establish a violation of the statute to which he entered his plea." *United States v. Trejo*, 610 F.3d 308, 313 (5th Cir. 2010) (emphases in original). "[N]otwithstanding an unconditional plea of guilty, we will reverse on direct appeal where the factual basis for the plea as shown of record fails to establish an element of the offense of conviction." *United States v. White*, 258 F.3d 374, 380 (5th Cir. 2001).

To determine whether a factual basis for a plea exists, we must compare "(1) the conduct to which the defendant admits with (2) the elements of the offense charged in the indictment or information." *United States v. Marek*, 238 F.3d 310, 315 (5th Cir. 2001) (en banc). "If sufficiently specific, an indictment or information

---

revoke, set aside, and declare void the final order admitting such person to citizenship, and shall declare the certificate of naturalization of such person to be canceled." 8 U.S.C. § 1451(e).

[3] Nepal originally raised as a threshold issue the question whether we should enforce the appeal waiver contained in his plea agreement to bar his appeal. But the Government concedes, correctly, that the waiver does not bar Nepal from challenging the factual basis of his plea. *See United States v. Baymon*, 312 F.3d 725, 727 (5th Cir. 2002) ("[E]ven if there is an unconditional plea of guilty or a waiver of appeal provision in a plea agreement, this Court has the power to review if the factual basis for the plea fails to establish an element of the offense which the defendant pled guilty to.").

No. 17-10228

can be used as the sole source of the factual basis for a guilty plea." *United States v. Hildenbrand*, 527 F.3d 466, 475 (5th Cir. 2008) (quoting *United States v. Adams*, 961 F.2d 505, 509 (5th Cir. 1992)). Additionally, "[o]n plain error review, we [may] take a wide look, examining 'the *entire* record for facts supporting [the] guilty plea'" and drawing reasonable inferences from those facts. *United States v. Barton*, 879 F.3d 595, 599 (5th Cir. 2018) (quoting *Trejo*, 610 F.3d at 317).

When the defendant does not object to the sufficiency of the factual basis of his plea before the district court—instead raising for the first time on appeal the question whether the undisputed factual basis is sufficient as a matter of law to sustain his plea (as Nepal does here)—our review is restricted to plain error. *United States v. Broussard*, 669 F.3d 537, 546 (5th Cir. 2012); *see also* Fed. R. Crim. P. 52(b).[4] Success on plain error review requires a showing by the defendant that a clear and obvious error affected his substantial rights. *United States v. Fairley*, 880 F.3d 198, 206 (5th Cir. 2018). If the defendant makes this showing, "it is well established that courts 'should' correct a forfeited plain error that affects substantial rights 'if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Rosales-Mireles v. United States*, 585 U.S. —, —, 138 S. Ct. 1897, 1906 (2018) (quoting *United States v. Olano*, 507 U.S. 725, 735 (1993)).

### III

### A

The Supreme Court decided *Maslenjak v. United States*, 582 U.S. —, 137 S. Ct. 1918 (2017), which interpreted Section 1425(a), while this appeal was pending; it is now the controlling law. *See Griffith v. Kentucky*, 479 U.S. 314, 328

---

[4] Nepal contends that our review should be *de novo*. But the principal case he cites to support that contention, *United States v. Humphrey*, 287 F.3d 422, 443 (6th Cir. 2002), *overruled on other grounds by United States v. Leachman*, 309 F.3d 377, 383 (6th Cir. 2002), has never been relied on by any court for the proposition that *de novo* review, rather than plain error, should apply in these circumstances. We will not rely on it, either.

(1987). Thus, resolution of the question whether the district court committed error requires us to decide whether Nepal has established that *Maslenjak* altered the Section 1425(a) analysis in such a way that the indictment and factual resume no longer provide a sufficient factual basis for his plea.

Section 1425(a) provides that "[w]hoever knowingly procures or attempts to procure, contrary to law, the naturalization of any person" commits an offense. 18 U.S.C. § 1425(a).[5] In *Maslenjak*, the Supreme Court adopted the prevailing interpretation of Section 1425(a) that, in prosecutions arising from a defendant's making false statements to acquire citizenship, the Government must establish some sort of causal relationship between the false statements and the acquisition of citizenship.[6] 137 S. Ct. at 1922–23. So now, "the proper causal inquiry under § 1425(a) is framed in objective terms: To decide whether a defendant acquired citizenship by means of a lie, a jury must evaluate how knowledge of the real facts would have affected a reasonable government official properly applying naturalization law." *Id.* at 1928.

The Government can satisfy that causal inquiry using one of two theories. The first theory is fairly straightforward: "[i]f the facts the defendant misrepresented are themselves disqualifying"—for example, if the defendant misrepresented her travel history to circumvent the requirement that an applicant be

_____

[5] Our sole precedential Section 1425(a) decision, *United States v. Colwell*, 764 F.2d 1070 (5th Cir. 1985), involved review of the conviction of a U.S. citizen who made false statements to obtain citizenship for others, namely, by participating in preparing false birth documents for Mexican babies to facilitate their adoption in the United States by American families. We have never before reviewed the conviction of a non-citizen applicant who unlawfully procured **his own** citizenship.

[6] *See United States v. Munyenyezi*, 781 F.3d 532, 536 (1st Cir. 2015); *United States v. Latchin*, 554 F.3d 709, 712–15 (7th Cir. 2009); *United States v. Alferahin*, 433 F.3d 1148, 1154–56 (9th Cir. 2006); *United States v. Aladekoba*, 61 F. App'x 27, 28 (4th Cir. 2003). The Sixth Circuit had interpreted the statute to mean that the Government need not prove that a defendant's false statements were material to, or influenced, the decision to approve her citizenship application. As long as a defendant made a false statement—on any subject—during the naturalization process and later procured naturalization, then she violated Section 1425(a). *See United States v. Maslenjak*, 821 F.3d 675, 682–93 (6th Cir. 2016), *vacated*, 137 S. Ct. 1918.

physically present in the United States for more than half of the five-year period preceding her application, or falsely denies being convicted of an aggravated felony to circumvent the good moral character requirement—then "there is an obvious causal link between the defendant's lie and her procurement of citizenship." *Id.* In these circumstances, the inquiry is satisfied because "her lie must have played a role in her naturalization." *Id.* at 1928–29.

The Supreme Court characterizes the second theory as an "investigation-based theory," reasoning that "even if the true facts lying behind a false statement would not 'in and of themselves justify denial of citizenship,' they could have 'led to the discovery of other facts which would' do so." *Id.* at 1929 (quoting *Chaunt v. United States*, 364 U.S. 350, 352–53 (1960)); *see also id.* ("[A] person whose lies throw investigators off a trail leading to disqualifying facts gets her citizenship by means of those lies—no less than if she had denied the damning facts at the very end of the trail."). This theory requires its own two-part showing. First, "the Government has to prove that the misrepresented fact was sufficiently relevant to one or another naturalization criterion that it would have prompted reasonable officials, 'seeking only evidence concerning citizenship qualifications,' to undertake further investigation." *Id.* (quoting *Kungys v. United States*, 485 U.S. 759, 774 n.9 (1988) (opinion of Scalia, J.)). Second, the Government must "establish that the investigation 'would predictably have disclosed' some legal disqualification." *Id.* (quoting *Kungys*, 485 U.S. at 774). If it does, a conviction can obtain.

But whichever the theory, if the available evidence indicates that the defendant actually was qualified for the citizenship he obtained, that "qualification for citizenship is a complete defense to a prosecution brought under § 1425(a)." *Id.* at 1929–30. In other words, despite the Government's success under either the first or second causal theories, if the applicant shows that he was

qualified to become a U.S. citizen, notwithstanding the false statement, no conviction can obtain. *Id.* at 1931.

The false statement we concern ourselves with here is Nepal's statement that he had no children. Having children does not facially disqualify Nepal from citizenship, *see United States v. Haroon*, 874 F.3d 479, 484 (6th Cir. 2017) ("Divorcees and parents may apply for citizenship."), *cert. denied*, 584 U.S. —, 138 S. Ct. 1576 (2018), so the Government must rely on the investigation-based theory. We conclude that the indictment and factual resume together satisfy the Government's *Maslenjak* burden on both prongs of this theory.[7]

We look initially at whether Nepal's misrepresentations concealing his fatherhood are "sufficiently relevant to one or another naturalization criterion." *Id.* at 1929. They are. The Immigration and Nationality Act provides that "[n]o person . . . shall be naturalized unless such applicant . . . has been and still is a person of good moral character" during the statutorily prescribed period. 8 U.S.C. § 1427(a)(3).[8] The applicant bears the burden of demonstrating his good moral character. *Id.* § 1427(e). Section 101 of the INA provides a nonexhaustive list of conditions that, standing alone, foreclose an applicant's demonstration of

---

[7] We are cognizant that we are looking backward at a forward-looking analysis. We must obscure the hindsight granted to us by Nepal's plea in order to put ourselves in the position of a reasonable immigration official learning of this information for the first time. This exercise prevents us from reaching the results-based conclusion that because officials *did* discover a disqualification then the Government has necessarily ***proven*** that a truthful disclosure (1) was relevant to a naturalization criterion, (2) would have prompted a reasonable official to investigate, and (3) would predictably have led to disclosure of a disqualification.

[8] When an applicant's good moral character is in question, the statutorily prescribed period is practically boundless. *See* 8 C.F.R. § 316.10(a)(2) ("[USCIS] is not limited to reviewing the applicant's conduct during the five years immediately preceding the filing of the application, but may take into consideration, as a basis for its determination, the applicant's conduct and acts at any time prior to that period, if the conduct of the applicant during the statutory period does not reflect that there has been reform of character from an earlier period or if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character.").

good moral character. *See id.* § 1101(f). Department of Homeland Security regulations offer a more exhaustive list of conditions, and an applicant "***shall*** be found to lack good moral character" if he meets any of them. 8 C.F.R. § 316.10(b) (emphasis added). Though neither Nepal's indictment nor the factual resume cites a specific provision or regulation, their texts suggest reliance on (and the Government confirms as much in its brief) the regulation providing that an applicant "shall be found to lack good moral character, if, during the statutory period, the applicant [w]illfully failed or refused to support dependents." *Id.* § 316.10(b)(3)(i).

Having identified the relevant criterion, we proceed. To determine whether the Government would satisfy its burden under the investigatory theory's first prong, *Maslenjak* instructs us to ask whether a reasonable official, seeking only evidence concerning citizenship qualifications, would undertake further investigation were she to learn that an applicant had children. Considering 8 C.F.R. § 316.10(b)(3)(i), and how violating that regulation affects an applicant's qualification, we think the answer to that question is undoubtedly ***yes***.

Turning to the second prong, though *Maslenjak* rejected application of a strict causal requirement that would "demand[] proof positive that a disqualifying fact would have been found," the Court nonetheless adopted a "demanding but still practical causal standard" under which the Government must offer sufficient proof to "establish that the investigation 'would predictably have disclosed' some legal disqualification." 137 S. Ct. at 1929 (quoting *Kungys*, 485 U.S. at 774). There is sufficient proof here that an investigation would predictably disclose a legal disqualification if it exists. This is common sense. If an applicant discloses that he has children, the investigatory questions that would follow that disclosure—bearing in mind that a willful failure or refusal to financially support any dependent child is a legal disqualification on good moral character grounds—practically write themselves: *What are their names? How old are they?*

No. 17-10228

*Where do they live? Are you responsible for supporting them? In what amounts?*
*Do you consistently meet your support obligations?* Any investigation seeking
answers to these questions would predictably reveal if an applicant who had
children had willfully failed or refused to provide financial support to those chil-
dren—a legal disqualification.

We therefore conclude that, even post-*Maslenjak*, the indictment and fac-
tual resume provide a sufficient factual basis for Nepal's plea and for all statutory
elements of Section 1425(a), the offense of conviction.

## B

Alternatively, Nepal argues that he should be entitled to invoke the de-
fense to a Section 1425(a) prosecution announced in *Maslenjak*.[9] The Supreme
Court explained that because it has "never read a statute to strip citizenship from
someone who met the legal criteria for acquiring it," the statute should not be
used as "a tool for denaturalizing people who, the available evidence indicates,
were actually qualified for the citizenship they obtained." *Maslenjak*, 137 S. Ct.
at 1930. On this basis, it crafted the defense: "Whatever the Government shows
with respect to a thwarted investigation, qualification for citizenship is a com-
plete defense to a prosecution brought under § 1425(a)." *Id.* Put differently, the
defense is available only to a defendant who shows, despite the Government's
satisfying its Section 1425(a) burden, that no fact has been found that disquali-
fies him from citizenship.

Even if we assume that the district court's acceptance of the plea—without
permitting Nepal the opportunity to assert the affirmative defense—was error,

---

[9] The Government contends that, despite its concession that Nepal's appeal waiver did
not bar him from challenging the factual basis of his plea, *see supra* note 3, it should still be
able to enforce the waiver against Nepal's assertion of entitlement to the affirmative defense.
We decline to address the issue whether a waiver bars our consideration of an appeal brought
under these circumstances. Instead, we assume, without deciding, that it does not.

and that the error was plain, Nepal has not shown that error affected his substantial rights. To satisfy this third prong, a defendant "must 'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 578 U.S. —, —, 136 S. Ct. 1338, 1343 (2016) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004)), *i.e.*, that "he would not have entered the plea," *United States v. London*, 568 F.3d 553, 558 (5th Cir. 2009) (quoting *United States v. Castro-Trevino*, 464 F.3d 536, 541 (5th Cir. 2006)). We "may consult the whole record when considering the effect of any error on substantial rights." *Vonn*, 535 U.S. at 59.

Nepal argues that his substantial rights were affected because *Maslenjak*'s establishment of the new defense made the acceptance of his guilty plea a structural error. "The purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial." *Weaver v. Massachusetts*, 582 U.S. —, —, 137 S. Ct. 1899, 1907 (2017). "Thus, the defining feature of a structural error is that it 'affect[s] the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself.'" *Id.* (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)). In *Weaver*, the Supreme Court laid out three broad categories of structural error: first, "if the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest," *id.* at 1908 (citing *McKaskie v. Wiggins*, 465 U.S. 168 (1984) (deprivation of the right to self-representation at trial)); second, "if the effects of the error are simply too hard to measure," *id.* (citing *Vasquez v. Hillery*, 474 U.S. 254 (1986) (unlawful exclusion of grand jurors of defendant's race)); and third, "if the error always results in fundamental unfairness," *id.* (citing *Gideon v. Wainwright*, 372 U.S. 335 (1963) (total deprivation of counsel), and *Sullivan v. Louisiana*, 508 U.S. 275 (1993) (erroneous reasonable doubt instruction)). However, "[a]n error can count as structural even if the error does not lead to fundamental unfairness in every

11

case." *Id.*

The announcement of a new defense, though, does not fall into any of these categories, nor is the error in Nepal's case on the same level as the errors targeted in the Court's structural error jurisprudence. Indeed, announcement of a new defense is a far cry from deprivation of counsel, deprivation of the right to self-representation, or unlawful exclusion of grand jurors of the defendant's race. Furthermore, and perhaps more importantly, none of the Supreme Court's structural error cases are direct appeals from judgments of conviction within the federal system like this case; they are either appeals from state courts which had considered the error under their own rules or federal habeas challenges to state convictions. *See Johnson v. United States*, 520 U.S. 461, 466 (1997) (rejecting federal defendant's argument that the error in her trial was structural: "the seriousness of the error claimed does not remove consideration of it from the ambit of" Rule 52(b), "which by its terms governs direct appeals from judgments of conviction in the federal system"; creating an exception to Rule 52(b) to accommodate the error of which defendant complained would be "[e]ven less appropriate than an unwarranted expansion of the Rule"). The error in this case is not structural error.

Unfortunately for Nepal, he puts nearly all his substantial-rights eggs in the structural-error basket. The only other possible argument we could generously glean from his briefing—a passing analogy to our decision in *United States v. Knowles*, 29 F.3d 947 (5th Cir. 1994)—is unavailing. There, the defendant was convicted of possession of a firearm in a school zone in violation of the Gun Free School Zones Act. While the case was pending on direct appeal, we decided *United States v. Lopez*, 2 F.3d 1342 (5th Cir. 1993), in which we held that the Gun Free School Zones Act was an unconstitutional exercise of Congress's power under

the Commerce Clause.[10] Because Knowles did not raise any challenge to the constitutionality of the Gun Free School Zones Act in the district court, we reviewed his conviction for plain error. When we reached the substantial rights prong of the analysis, we explained, "It is . . . evident that this error affected the outcome of the proceedings below. Had the *Lopez* argument been raised in the district court, it should have resulted in the dismissal of the Gun Free School Zones Act count from Knowles's indictment." *Knowles*, 29 F.3d at 951. We did not fault Knowles for not raising the argument prior to pleading guilty, because during the nearly sixty years before *Lopez* was decided, the Supreme Court had declined to declare unconstitutional any federal statute promulgated under the Commerce Clause.[11]

There was a direct correlation between the decision in *Lopez* and the potential change in outcome in *Knowles*: the statute under which Knowles was convicted was later declared unconstitutional. But there is no similar correlation between the decision in *Maslenjak* and the potential change in outcome here. The mere creation of a defense that a defendant may or may not be able to satisfy under certain circumstances is not comparable to a declaration that a statute of conviction is unconstitutional. Beyond that, we are unconvinced that the outcome in Nepal's case would have been any different because, though the affirmative defense did not exist in this Circuit prior to *Maslenjak*, the critical disqualifying regulation, 8 C.F.R. § 316.10(b)(3)(i), did. And *Maslenjak* did not alter it. By agreeing to the factual basis of his plea, Nepal essentially conceded that the Government could prove that he violated this regulation because he willfully

---

[10] That decision would later be affirmed by the Supreme Court after *Knowles* was decided. *See United States v. Lopez*, 514 U.S. 549 (1995).

[11] *See, e.g., Hodel v. Va. Surface Min. & Reclamation Ass'n*, 452 U.S. 264 (1981); *Perez v. United States*, 402 U.S. 146 (1971); *Katzenbach v. McClung*, 379 U.S. 294 (1964); *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241 (1964); *Wickard v. Filburn*, 317 U.S. 111 (1942); *United States v. Darby*, 312 U.S. 100 (1941); *United States v. Carolene Prods. Co.*, 304 U.S. 144 (1938); *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937).

No. 17-10228

failed or refused to support his son.

We conclude that Nepal has not shown a reasonable probability, based on the evidence and testimony in the record, that had he known of the defense, he would not have pleaded guilty. *See London*, 568 F.3d at 558; *Castro-Trevino*, 464 F.3d at 541. Failure to show an effect on his substantial rights is fatal to his claim of plain error.

\*    \*    \*

The Defendant's conviction and sentence are **AFFIRMED**.