# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
February 3, 2021

Lyle W. Cayce
Clerk

No. 19-50683

United States of America,

*Plaintiff—Appellee*,

*versus*

Raymond Issac Mendoza,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:19-CR-22-DC-2

Before Wiener, Costa, and Willett, *Circuit Judges*.

Per Curiam:[*]

Defendant-Appellant Raymond Issac Mendoza, along with Rafael Munoz and David Alex Reyes ("co-defendants"), pleaded guilty to, and was convicted of, conspiracy to possess with intent to distribute cocaine. Mendoza appeals, contending that the district court did not have an adequate factual basis to accept his guilty plea and convict him. Even when we assume

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-50683

that the district court erred, we conclude that this error was not clear and obvious and affirm.

## I. Background

The following facts derive from Mendoza's written plea agreement and his plea colloquy, which were conducted under oath.

The Odessa, Texas, Police Department received information that individuals residing at 419 Schell Street in Odessa were operating a cocaine buy-sell operation. Officers went to the residence, knocked on the front door, and heard a man, later identified as Munoz, yell, "The cops are here." Believing that evidence could be destroyed, officers entered the residence to perform a protective sweep and found Mendoza and Reyes in a "small back room/pantry," which was decorated as a "shrine" or "prayer altar" to Santa Muerte, a religious figure whom many drug traffickers regard as offering spiritual protection.[1] Mendoza and Reyes were leaning on a counter that had a white powdery substance on it. The officers also saw, in plain view, a baggie containing the same substance.

The officers then conducted a search of the residence. In the pantry, they found 400 grams of suspected cocaine contained in individual baggies, a digital scale, and a spoon with cocaine residue. In other rooms of the residence, they found two kilograms of cocaine, plastic wrappings consistent with the wrappings for two kilograms of cocaine, $7,520 cash, another scale, and four guns. The officers read Munoz, Mendoza, and Reyes their *Miranda* rights, after which the three men agreed to provide statements.

---

[1] *See United States v. Guerrero*, 768 F.3d 351, 356 (5th Cir. 2014) (noting the symbolism of Santa Muerte to drug traffickers).

No. 19-50683

Munoz stated that Wilmer Paz owns the house and that Paz allowed Munoz to stay there. Munoz also stated that he had not "seen anything going on" at the residence.

Mendoza stated that: (1) he was friends with Paz; (2) while Mendoza was picking up his son from school, Paz asked him to take a burrito to the Schell Street house; and (3) when he arrived at that house, he left his son outside and went into the pantry to take a "bump" of cocaine.[2] Mendoza further stated that, when he arrived at the house, Reyes was in a "back room" (which the PSR describes as the southwest room and the pantry), cutting down a fist-sized piece of cocaine.

Reyes said in his statement: (1) he housesits for Paz; (2) various individuals drop off cocaine at the residence; and (3) the cocaine is then cut, weighed, and prepared in the residence for distribution.

Munoz, Mendoza, and Reyes were each charged in a one count indictment with drug conspiracy in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. At a probable cause hearing, Mendoza's attorney told the magistrate judge that the cocaine conspiracy did not involve Mendoza in any way. In addition, the magistrate judge informed Mendoza at a probable cause hearing that he could possibly defend his case because he was merely present at the scene of the conspiracy. Rather than pursuing this defense, however, Mendoza pleaded guilty to the charge pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(A) plea agreement.

Mendoza's signed plea agreement stated that he conspired with others to possess with intent to distribute cocaine. He also agreed to the factual basis of his charged offense, which is described in detail above.

---

[2] The presentence report ("PSR") states that Mendoza's 11-year-old son was found waiting outside the residence in a black Mustang.

Mendoza waived his trial and appellate rights, including the right to challenge his conviction on the ground that his conduct did not fall within the scope of the statutes under which he was convicted.

During the plea colloquy, which was conducted under oath before the magistrate judge, Mendoza said that he had sufficient time to discuss his case, and any defenses he might have, with his attorney. He also said that he was satisfied with his attorney's representation and that he had gone over the indictment with his attorney before signing his plea agreement.

After the magistrate judge read aloud the charges in the indictment, Mendoza affirmed that he understood those charges and acknowledged that he had the right to plead not guilty. Mendoza answered in the affirmative when the magistrate judge asked, "Are you pleading guilty because you are guilty and for no other reason?" Mendoza further confirmed that: (1) He had gone over the factual basis with his attorney; (2) he understood it; (3) the facts contained in it were accurate, true, and correct; and (4) it spelled out what he did in this case. The magistrate judge concluded by stating that he would recommend that the district court judge accept Mendoza's guilty plea.

After convicting Mendoza of drug conspiracy, the district court sentenced him, within the guidelines range, to sixty-eight months of imprisonment and five years of supervised release. Mendoza timely filed a notice of appeal.

## II. Plain Error Review

Although Mendoza signed an appeal waiver as part of his plea agreement, that waiver does not bar our review of the adequacy of the factual

basis for Mendoza's guilty plea.[3] We apply a plain error standard of review because Mendoza did not object to the factual basis of his guilty plea in the district court.[4] Under this standard, Mendoza has the burden of showing that (1) there is error, (2) the error is clear and obvious, and (3) the error affects his substantial rights.[5] "Even when all three requirements are met, we have discretion to correct the error and will do so only if 'the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'"[6]

Rule 11(b)(3) requires the district court to determine that there is a factual basis for the plea prior to entering judgment against the defendant.[7] On appeal, "if the factual basis is found to be sufficient to support the plea, then the plea agreement can be upheld and the waiver of appeal provision would bar any additional arguments raised on appeal."[8] But "[i]f the factual basis is not sufficient as to any count, the conviction should be vacated, and the case remanded for further proceedings without consideration of any additional issues raised."[9]

To determine whether a factual basis for a guilty plea exists, we must compare the elements of the charged offense with the conduct that the

---

[3] *See United States v. Trejo*, 610 F.3d 308, 312–13 (5th Cir. 2010).

[4] *See United States v. Avalos-Sanchez*, 975 F.3d 436, 439 (5th Cir. 2020); *Trejo*, 610 F.3d at 313.

[5] *Puckett v. United States*, 556 U.S. 129, 135 (2009); *United States v. Castro-Trevino*, 464 F.3d 536, 541 (5th Cir. 2006); *United States v. Marek*, 238 F.3d 310, 315 (5th Cir. 2001) (en banc).

[6] *Avalos-Sanchez*, 975 F.3d at 439–40 (quoting *Marek*, 238 F.3d at 315).

[7] Fed. R. Crim. P. 11(b)(3).

[8] *United States v. Hildenbrand*, 527 F.3d 466, 474 (5th Cir. 2008) (citing *United States v. Baymon*, 312 F.3d 725, 729 (5th Cir. 2002)).

[9] *Id.* (citing *United States v. Carter*, 117 F.3d 262, 265 (5th Cir. 1997)).

No. 19-50683

defendant admits.[10] The elements of drug conspiracy include: "(1) an agreement by two or more persons to violate the narcotics laws; (2) a defendant's knowledge of the agreement; and (3) his voluntary participation in the agreement."[11]

## III. Analysis

Mendoza contends that the district court did not have an adequate factual basis for accepting his guilty plea. The Government responds that Mendoza's sworn admissions and the circumstantial evidence show that the district court did not plainly err in accepting Mendoza's guilty plea. Mendoza confines his argument to one element of drug conspiracy, contending that he did not agree with anyone to possess more than 500 grams of cocaine with the intent to distribute it. We therefore do not consider the other two elements of drug conspiracy.

Whether the district court had an adequate factual basis to accept Mendoza's guilty plea and convict him is a close call. The evidence of an agreement is confined to Mendoza's admissions and the circumstantial evidence against him. Mendoza admitted that there were large quantities of cocaine and materials used to pack and distribute it in the pantry where the officers found him. He also admitted that Paz, the leader of a drug trafficking organization, asked him to deliver a burrito to the Schell Street house, the scene of the drug conspiracy. But the district court may not accept a guilty

---

[10] *United States v. Nepal*, 894 F.3d 204, 208 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 831 (2019).

[11] *United States v. Vargas-Ocampo*, 747 F.3d 299, 303 (5th Cir. 2014) (en banc) (citing *United States v. Misher*, 99 F.3d 664, 667 (5th Cir. 1996)).

plea based on a defendant's admissions in the plea agreement alone.[12] The only other evidence against Mendoza—circumstantial evidence—is weak: Officers found Mendoza in the Schell Street house pantry and saw a baggie containing a white powdery substance in that room. The officers also discovered 400 grams of suspected cocaine contained in individual baggies, one digital scale, and a spoon with cocaine residue on it in the pantry. This evidence could indicate that Mendoza was involved in the conspiracy, or it could show that he was just an individual buyer. On balance, we assume that there was error. The district court must be certain of the factual basis supporting a guilty plea in order to accept it.[13] Here, it is just as likely that Mendoza was an individual buyer as it is that he agreed to participate in the drug conspiracy.

We conclude, however, that the assumed error is not clear and obvious. The outcome of Mendoza's mere presence defense is uncertain under current law,[14] which alone requires us to hold that the error is not clear

---

[12] Otherwise, defendants who plead guilty could never challenge the factual basis of their convictions. *Cf. United States v. Adams*, 961 F.2d 505, 508 (5th Cir. 1992) ("A guilty plea is insufficient in itself to support a criminal conviction.").

[13] *Trejo*, 610 F.3d at 313 ("Rule 11(b)(3) requires a district court taking a guilty plea to make certain that the *factual* conduct admitted by the defendant is sufficient as a *matter of law* to establish a violation of the statute to which he entered his plea.").

[14] *Compare United States v. Thomas*, 690 F.3d 358, 366–67 (5th Cir. 2012) (affirming conspiracy conviction, reasoning that circumstantial evidence defeated the defendant's mere presence defense), *and United States v. Gallo*, 927 F.2d 815, 820–21 (5th Cir. 1991) (rejecting mere presence defense based on circumstantial evidence that the defendant was involved in the conspiracy—namely, the fact that he was entrusted with a large portion of the drug proceeds), *with United States v. Espinoza-Seanez*, 862 F.2d 526, 536–37 (5th Cir. 1988) (noting that "mere knowing presence" is insufficient to establish participation in a conspiracy and reversing conspiracy conviction), *and United States v. Maltos*, 985 F.2d 743, 747 (5th Cir. 1992) (concluding that the defendant's "association with individuals engaged

and obvious.[15] Furthermore, reasonable minds could resolve his "mere presence" defense either way.[16] For example, the pantry in which the officers found Mendoza contained a significant amount of cocaine along with drug distribution materials, and Paz, the leader of a drug organization, sent Mendoza to the Schell Street house. It is unlikely that a leader of a drug organization would allow Mendoza to be present at the scene of the drug conspiracy if he were not involved in that conspiracy. It is also possible, however, that Mendoza was simply dropping off a burrito and that his friends allowed him to use cocaine after the drop off. Because of the close nature of this case, we hold that any error is not clear and obvious.

Even if the assumed error were clear and obvious, Mendoza must show that the error affected his substantial rights, *i.e.*, there was "a reasonable probability that, but for the error . . . he would not have entered the plea."[17] Mendoza cannot meet this burden. There is evidence that he and his attorney were well aware that the conspiracy charge could be defended by pointing to the absence of guilt beyond Mendoza's "mere presence" at the scene. Rather than pursue that defense, however, Mendoza pleaded guilty,

---

in the transport of cocaine and his presence during the transport of two shipments of such contraband" did not show that he was involved in the conspiracy).

[15] *See Trejo*, 610 F.3d at 319 ("At a minimum, establishing plain error requires a showing that the error was clear under current law.") (cleaned up).

[16] *Cf. Puckett*, 556 U.S. at 135 (noting that under plain error review, "the legal error must be clear or obvious, rather than subject to reasonable dispute").

[17] *Nepal*, 894 F.3d at 212 (citations omitted) (quoting *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016); *United States v. London*, 568 F.3d 553, 558 (5th Cir. 2009)).

No. 19-50683

and he never attempted to withdraw his guilty plea.[18] He therefore cannot show that any error affected his substantial rights.[19]

## IV. Conclusion

Because Mendoza has failed to show that the district court's assumed error was clear and obvious, the district court had an adequate factual basis under Rule 11(b)(3) for accepting Mendoza's guilty plea.[20] The district court's judgment and the sentence that it imposed are AFFIRMED.

---

[18] Mendoza contends that his decision to plead, and his inaction as a layperson to withdraw, show that his misunderstanding of the elements of the offense was the reason he pleaded guilty. Contrary to Mendoza's contention, he was represented by counsel; he was not a "layperson" left alone to decide whether to withdraw his guilty plea.

[19] In another unpublished case, we affirmed a defendant's conviction when the only evidence against him was his admissions in writing and in open court. *United States v. Stotts*, 397 F. App'x 68, 71–72 (5th Cir. 2010) (unpublished). We explained in that case that a defendant's burden under plain error review is "high." *Id.* at 71. We further noted that the defendant repeatedly admitted that he committed the drug conspiracy offense and received benefits from pleading guilty. *Id.* at 72. Thus, we held that, even assuming there was a clear and obvious error, that error did not affect the defendant's substantial rights. *Id.* Similarly, Mendoza repeatedly admitted that he agreed to the drug conspiracy. There is also circumstantial evidence from which we can infer Mendoza's agreement to participate in the offense. Mendoza received a more lenient sentence than if he had not pleaded guilty. He therefore cannot show that the assumed error affected his substantial rights.

[20] Because we find that there is no clear and obvious error that affected Mendoza's substantial rights, we need not consider our discretion to correct the error if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Marek*, 238 F.3d at 315. After all, this power is discretionary, not mandatory. *See Puckett*, 556 U.S. at 135.