In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3545

LAITH WILLIAM MURAD BIJAN,

*Petitioner-Appellant,*

*v.*

UNITED STATES CITIZENSHIP & IMMIGRATION SERVICES,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 C 10636 — **Charles R. Norgle**, *Judge.*

ARGUED JULY 5, 2018 — DECIDED AUGUST 20, 2018

Before WOOD, *Chief Judge*, and SCUDDER and ST. EVE, *Circuit Judges*.

WOOD, *Chief Judge*. Five years after entering the United States, ostensibly as the unmarried son of a lawful permanent resident, Laith Bijan applied to become a naturalized citizen. United States Citizenship and Immigration Services (USCIS) denied his application, concluding that Bijan actually had been married when he entered the country and had thus misrepresented his eligibility for lawful permanent residence and

citizenship. Bijan sought judicial review of that decision. Reviewing USCIS's decision *de novo*, the district court concluded that Bijan had misrepresented his marital status and lied under oath during a naturalization interview when he denied giving "false or misleading information" while applying for an immigration benefit. We affirm on the alternate ground that Bijan previously had given the agency false information when he failed to disclose on his visa application that he had two children and later lied about that omission.

Claiming that he was the unmarried son of a lawful permanent resident, Bijan (a citizen of Iraq) entered the United States in 2004. His authorization for doing so dated back to 1991, when his mother, already a lawful permanent resident, filed an I-130 petition ("Petition for Alien Relative") on his behalf. On the petition, she identified Bijan as unmarried. Twelve years later, in 2003, after fleeing Iraq for Jordan with his two children and their mother, Bijan sought to enter the United States based on his mother's previously approved petition. On his visa application, consistent with his mother's petition, Bijan stated that he was unmarried and had no children. He was granted lawful permanent residence and entered the United States in January 2004.

Bijan and the mother of his children, Nahrain Shaoul, remained apart for several years. In 2006 Bijan traveled to Jordan, where Shaoul still lived, and, according to Bijan, the couple were married. Upon returning to the United States that same year, Bijan filed I-130 petitions for his children. USCIS denied these applications because Bijan had made conflicting statements in communications with the agency and had not previously identified his children on his 2003 visa application. (The children were born in 1997 and 1999.)

In 2009 Bijan applied for naturalization. USCIS interviewed Bijan and denied his application, concluding that there was evidence he had been married when he entered the U.S. in 2004 under a status for *unmarried* sons or daughters of lawful permanent residents. The agency also noted that Bijan had omitted from his 2003 visa application the fact that he had children.

Bijan requested a hearing and was interviewed again in November 2012, under oath. During that interview, he testified that he had never "given false or misleading information to any U.S. government official while applying for any immigration benefit[.]" USCIS denied his application a second time. The agency determined again that there was evidence suggesting that Bijan had married Shaoul before he became a lawful permanent resident in January 2004, and therefore he had not established that he was eligible for naturalization. And the agency reiterated that Bijan had falsely omitted his children from his 2003 visa application.

Bijan then petitioned the district court under 8 U.S.C. § 1421(c) for relief from the denial of his application for naturalization. He focused primarily on whether he had been married in 2004 when he became a permanent resident. He submitted a marriage certificate showing that he did not marry Shaoul until 2006, and a church certificate showing that he had not been "bound to any previous engagement or marriage" as of October 2003. USCIS responded by submitting a set of marriage records from a church in Baghdad, Iraq. These records were accompanied by the affidavit of the church's bishop, who explained that the records reflected the marriage of "Laith William Murad" and "Nahrain Boutros Shaoul" on

September 21, 1996. Bijan countered that these records con-flicted with another certificate, signed by the same bishop, that gave a marriage date of "1990" for "Laith W. Bijan" and "Nahrain P. Shaoul."

The court granted summary judgment for USCIS. It found no tenable dispute of fact about Bijan's marital status at the time he entered the United States in 2004 as an "unmarried son" of a permanent resident: the court thought it clear that he was already married at that point and that he had not been truthful about this fact during his naturalization interviews. Bijan had lied further during those interviews, the court added, when he denied giving false information to immigration officials: he *had* given false information when, among other things, he had omitted from his 2003 visa application the fact that he had two children. The court thus found that Bijan was ineligible for naturalization for two reasons: first, he had not been lawfully admitted for permanent residence as an "unmarried son" of a lawful permanent resident, see 8 U.S.C. § 1427(a)(1); 8 C.F.R. § 316.2(a)(2); and second, he had lied under oath and thus not shown "good moral charac-ter," see 8 U.S.C. § 1427(a)(3); 8 C.F.R. §§ 316.2(a)(7), 316.10(b)(2)(vi).

On appeal Bijan argues that genuine issues of fact exist re-garding his marital status when he became a lawful perma-nent resident in 2004 and the truthfulness of the information that he gave the government. He is entitled to pursue these arguments because "Congress specifically calls for *de novo* re-view in naturalization cases." *O'Sullivan v. USCIS*, 453 F.3d 809, 811–12 (7th Cir. 2006). They are thus not subject to the rules governing typical immigration cases, in which we are

bound by an immigration judge's factual and credibility determinations. Further, although it is Bijan's burden to establish eligibility for naturalization, see *Berenyi v. Dist. Dir., INS*, 385 U.S. 630, 636–37 (1967), he needs only to raise a fact question to survive summary judgment. See *Injeti v. USCIS*, 737 F.3d 311, 315 (4th Cir. 2013).

We turn first to the question of Bijan's marital status in 2004, when he became a lawful permanent resident. Bijan was admitted for permanent residence under 8 U.S.C. § 1153(a)(2)(B), the provision for unmarried sons and daughters of permanent residents; no visa category exists for *married* sons or daughters of permanent residents. See *id*. § 1153(a)(1)–(4). Thus if, as USCIS contends, Bijan got married after his mother's 1991 petition but before he became a permanent resident in 2004, then his mother's petition would have been revoked automatically and he would have been ineligible for permanent residence. 8 C.F.R. § 205.1(a)(3)(i)(I). Bijan's mother did become a citizen in 2000, before Bijan became a permanent resident, and she could have repetitioned for him at that time under the visa categories for either married or unmarried children of U.S. citizens, 8 U.S.C. § 1153(a)(1), (3). But she did not do so. This means that the only way Bijan could have been "lawfully admitted for permanent residence" is if he was, in fact, unmarried at the time of his 2003 visa application. His eligibility for naturalization in 2009, see 8 U.S.C. § 1427(a)(1); 8 C.F.R. § 316.2(a)(2), depends on the same thing.

We conclude that genuine questions of material fact exist with regard to Bijan's marital status in 2003–04. It is possible that, as Bijan testified, his children were born out of wedlock

and that he and Shaoul did not tie the knot until 2006. Furthermore, even if we were to ignore the 2006 marriage certificate, which the district judge found inadmissible, other evidence supports Bijan's contention that he was unmarried as of 2004. The bishop who attested to the accuracy of the 1996 marriage records had previously given conflicting information about Bijan's marriage date and other details. This constitutes specific impeachment evidence. See *Outlaw v. Newkirk*, 259 F.3d 833, 838 (7th Cir. 2001). In addition, Bijan explained that they did not marry until 2006 because Shaoul's parents did not consent to their marriage, and even after they had children he did not tell his own family about Shaoul because he feared that the news would upset his ailing father. Bijan is competent to testify to his own experiences, and that testimony may raise an issue of fact. See *McKinney v. Office of the Sheriff of Whitley Cnty.*, 866 F.3d 803, 814 (7th Cir. 2017); *Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003). Finally, Bijan's mother and brother corroborated Bijan's story that he did not tell them about Shaoul or the children until after his father died in 2004.

If this case were exclusively about marital status, we would have to remand for further proceedings. But it is not. The district court also concluded that Bijan had lied under oath when he said he had "never given false or misleading information to any U.S. government official while applying for any immigration benefit[.]" The government highlights two examples of false information: allegedly fraudulent baptismal certificates that Bijan submitted for his children's visa petitions, and Bijan's assertion that he had simply lost contact with his children at the time he filled out his own visa application.

We need not address the baptismal certificates. A more obvious example of falsification stands out to us—Bijan's failure to disclose on his 2003 visa application that he had any children, anywhere. Given that glaring omission, Bijan's testimony in 2012 that he had never given "false or misleading information" while "applying for any immigration benefit" was plainly false. True, the government did not spotlight this omission in its brief, but our review is *de novo*, and an appellee need not raise all possible alternative grounds for affirming the district court's decision. *Thayer v. Chiczewski*, 705 F.3d 237, 247 (7th Cir. 2012). The district court specifically found that Bijan's omission in his visa application of any reference to his children, followed by his denial of having lied in any immigration application, demonstrated that Bijan lacked good moral character and thus was ineligible for naturalization. It found unpersuasive Bijan's effort to explain the omission by saying that he had lost contact with his children when he filled out his own visa application. (Losing contact with one's children in no way implies their nonexistence.) The Sixth Circuit has observed that lying about previous lies, as Bijan has done, "reveal[s] a lack of good moral character," *United States v. Haroon*, 874 F.3d 479, 483 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 1576 (2018). We concur.

The undisputed facts show that Bijan was aware of the misrepresentation on his visa application and thus that he intended to obtain an immigration benefit—naturalization—by denying that he had made it. See *Kungys v. United States*, 485 U.S. 759, 779–80 (1988). During oral argument, Bijan's counsel questioned whether Bijan knew he had omitted his children from his visa application in 2003, given his limited English and the fact that someone else had filled out the application

on his behalf. But what matters for purposes of Bijan's natu-
ralization application is his false *testimony* with USCIS in 2012.
See 8 C.F.R. § 316.10(b)(2)(vi). Even if Bijan was unaware of
the omission at the time it was made, he was certainly aware
of it by the time USCIS brought it up—first, when the agency
denied visas for his children in 2006, and second, when it ini-
tially denied his naturalization application in April 2012. By
the time Bijan testified in November 2012 that he had "never
given false or misleading information," he had to have known
his statement was false. Because of this, Bijan cannot meet his
burden of establishing eligibility for naturalization.

We therefore AFFIRM the judgment of the district court.