RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0284p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

DIVNA MASLENJAK,

*Defendant-Appellant*.

┐
│
│
│
│
> No. 14-3864
│
│
│
│
┘

On Remand from the Supreme Court of the United States.

United States District Court for the Northern District of Ohio at Cleveland.
No. 1:13-cr-00126-1—Benita Y. Pearson, District Judge.

Argued:  October 3, 2018

Decided and Filed:  November 21, 2019

Before:  GIBBONS and McKEAGUE, Circuit Judges; ANDERSON, District Judge.[*]

───────────────

## COUNSEL

**ARGUED:**  Zimra Payvand Ahdout, KIRKLAND & ELLIS LLP, New York, New York, for Appellant.  Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.  **ON SUPPLEMENTAL BRIEF:**  Zimra Payvand Ahdout, KIRKLAND & ELLIS LLP, New York, New York, Christopher Landau, P.C., Patrick Haney, Jeff Nye, KIRKLAND & ELLIS LLP, Washington, D.C., for Appellant. Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

───────────────

[*]The Honorable S. Thomas Anderson, United States District Judge for the Western District of Tennessee, sitting by designation.

_____

**OPINION**

_____

JULIA SMITH GIBBONS, Circuit Judge.   Divna Maslenjak immigrated to the United States as a refugee in 2000.  Maslenjak claimed that she and her family feared for their safety because they faced "persecution from both sides of [Bosnia's] national rift."  *Maslenjak v. United States*, 137 S. Ct. 1918, 1923 (2017).  She said that Bosnian Muslims would persecute her family because of their ethnicity, and Bosnian Serbs would persecute her family because her husband had evaded conscription into the Bosnian Serb army.  But part of Maslenjak's story was untrue.  In fact, Maslenjak's husband had not only served in the Bosnian Serb army but was an officer in a brigade implicated in war crimes.

Six years later, when Maslenjak applied for naturalization, she again lied to immigration officials.  This time, Maslenjak's lies "concerned her prior statements to immigration officials: She swore that she had been honest when applying for admission as a refugee, but in fact she had not."  *Id*. at 1930.  In August 2007, Maslenjak was naturalized as a citizen of the United States.

Based on her lies during the naturalization process, Maslenjak was charged with and convicted of two crimes: (1) unlawful procurement of naturalization or citizenship, in violation of 18 U.S.C. § 1425(a); and (2) misuse of evidence of naturalization or citizenship, in violation of 18 U.S.C. § 1423.  At trial, the district court instructed the jury that it could convict Maslenjak of procuring her naturalization contrary to law based on a false statement in the naturalization process, even if the statement was not material.  Maslenjak challenged that instruction on appeal and this panel affirmed the district court.

The Supreme Court reversed.  It held that lies told in the immigration process must be material—meaning that the lies "would have mattered to an immigration official" and "played some role in [the] acquisition of citizenship."  *Maslenjak*, 137 S. Ct. at 1923.  The Court instructed that the government could satisfy this materiality element by proving one of two things beyond a reasonable doubt: (1) that the facts the applicant misrepresented would themselves disqualify her from receiving citizenship; or (2) that the applicant's false statements

hid facts that, if known, would have triggered an investigation that likely would have led to the discovery of other disqualifying facts. *Id.* at 1928–29. The Supreme Court remanded to this panel to determine whether the erroneous jury instruction was harmless. *Id.* at 1931.

Because the government has not proven beyond a reasonable doubt that a properly instructed jury would have convicted Maslenjak, the instructional error was not harmless. We therefore vacate Maslenjak's conviction and remand to the district court for a new trial.

I.

Petitioner Divna Maslenjak is an ethnic Serb who was raised in what is now Bosnia. Yugoslavia collapsed in the 1990s and began splitting into multiple countries along religious and ethnic lines. Bosnia was a new country formed by the split. Bosnia was primarily made up of three ethnic groups: Bosnian Muslims, Bosnian Serbs, and Bosnian Croatians. A civil war arose between the three ethnic groups and the Bosnian Serbs formed their own army, the "VRS," with the goal of establishing an independent state.

In 1998, Maslenjak and her family met with an American immigration officer in Belgrade to apply for refugee status. Maslenjak, who was the primary applicant for refugee status, explained in the application interview that her family feared persecution on multiple fronts. She stated that in 1992 the entire family had been forced to flee their home in Bosnia because of ethnic cleansing by Bosnian Muslims in the area. The family left Bosnia for a neighboring country for a short period of time. Then, Maslenjak said, she and the children returned to a majority-Serb area of Bosnia, but they had to leave her husband—Ratko Maslenjak—behind because he feared he would be conscripted into the Bosnian Serb army. As a result, Maslenjak stated, she and her children lived apart from her husband from 1992 to 1997. Thus, at the time of their application, the Maslenjaks couldn't return to their home in a majority-Muslim area of Bosnia because of persecution based on their ethnicity. And, according to Maslenjak, they also couldn't live as a family in a majority-Serb area of Bosnia because they feared retaliation for her husband's failure to serve in the Bosnian Serb army during the war. The Maslenjaks swore and affirmed that the information they provided in the refugee interview was true.

The parties do not contest that many of Maslenjak's statements in the refugee interview were false. In actuality, Maslenjak's husband lived with the rest of the family and served in the VRS from 1992 to 1997. During that time, Maslenjak's husband was an officer in a VRS brigade which perpetrated a 1995 genocide of 5,000 to 7,000 Bosnian Muslims in a United Nations safe zone.

Nevertheless, based on Maslenjak's interview, the family was granted refugee status in 1999 and moved to Ohio in 2000. Maslenjak obtained lawful permanent resident status in 2004.

In 2006, Maslenjak filed an N-400 Application for Naturalization. At the same time, she was interviewed and verbally asked the same questions as those on the N-400 form. The naturalization application and interview included two questions key to the case at bar:

> (23) Have you ever given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion or removal?

> (24) Have you ever lied to any U.S. government official to gain entry or admission into the United States?

CA6 R. 18, Appellant Appx., at 17. Maslenjak answered "no" to both questions. Her naturalization application was approved, and she became a United States citizen on August 3, 2007.

One month later, her husband was convicted in the Northern District of Ohio of making false statements on government documents by failing to report that he served in the VRS during the Bosnian War. The criminal conviction made Maslenjak's husband subject to removal from the United States, and he was subsequently taken into ICE custody. He then filed a petition for asylum.

Relying on her own naturalization status, Maslenjak filed an I-130 Petition for Alien Relative—a form only naturalized persons can submit—supporting her husband's asylum petition. In 2009, Maslenjak testified at her husband's immigration proceeding that, contrary to her representations in connection with her 1998 application for refugee status, her husband had lived with the family in Bosnia and served in the VRS after 1992.

A federal grand jury indicted Maslenjak in 2013 on two counts: (1) unlawful procurement of citizenship or naturalization, in violation of 18 U.S.C. § 1425(a); and (2) misuse of evidence of citizenship or naturalization, in violation of 18 U.S.C. § 1423.  As to the first count, the indictment alleged that Maslenjak unlawfully procured naturalization by answering "no" to questions 23 and 24 on the naturalization application even though she "then well knew she had lied to government officials when applying for her refugee status and her lawful permanent residence status" about her husband's whereabouts and military service.  DE 1, Indictment, Page ID 1–2.  As to the second count, the indictment charged Maslenjak with knowingly misusing her illegally obtained naturalization certificate to file an I-130 Petition for Alien Relative in support of her husband's asylum petition.

A jury convicted Maslenjak on both counts in 2014.  The district court sentenced Maslenjak to two years of probation, and, based on her conviction, revoked her citizenship pursuant to 8 U.S.C. § 1423.  Maslenjak timely appealed.

On appeal, the main issue was whether § 1425(a)—under which Maslenjak was convicted for unlawful procurement of naturalization—requires proof that a false statement is material to the naturalization decision.  Section 1425(a) makes it a crime to "knowingly procure[] or attempt[] to procure" naturalization "contrary to law."  Separately, 18 U.S.C. § 1015(a) prohibits "knowingly mak[ing] any false statement under oath" in a naturalization proceeding.  Thus, if an applicant violates § 1015(a), she has acted "contrary to law" for the purpose of § 1425(a).

At trial, the district court instructed the jury that to find Maslenjak had violated § 1015(a)—and therefore acted "contrary to law" under § 1425(a)—it was only required to conclude that "one of [her] statements was false," even if the "false statement did not influence the decision to approve [her] naturalization."  DE 62, 4/17/14 Trial Tr. IV, Page ID 1118–21. Maslenjak objected to that interpretation and argued on appeal that the district court erred by instructing the jury that it could convict under § 1425(a) based on any false statement in the naturalization process—that is, any violation of § 1015(a)—regardless of whether it played a role in her obtaining citizenship.  This panel affirmed Maslenjak's conviction and held that § 1425(a) does not require proof of a material false statement.

The Supreme Court granted *certiorari.* It vacated this panel's judgment, holding that the jury instructions were erroneous because they omitted a materiality requirement. *Maslenjak*, 137 S. Ct. at 1930–31. The Court explained that the district court erred by instructing the jury "that it could convict based on any false statement in the naturalization process, . . . no matter how inconsequential to the ultimate decision." *Id.* at 1930. "The issue a jury must decide in a case like this one," the Court specified, "is whether a false statement sufficiently altered those processes as to have influenced an award of citizenship." *Id.* at 1928. The Court remanded to this panel to determine whether the instructional error was harmless. *Id.* at 1930–31.

## II.

The district court's omission of an element in the jury instructions "is an error that is subject to harmless-error analysis." *Neder v. United States*, 527 U.S. 1, 15 (1999). An error is harmless when the government establishes "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). In other words, the government must prove on appeal that, beyond a reasonable doubt, a reasonable jury would have reached the same verdict without the error. *See id.* at 18 ("Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?").

## III.

The Supreme Court held that a conviction under § 1425(a) requires that Maslenjak's false statements were material to the decision to approve her citizenship application. *Maslenjak*, 137 S. Ct. at 1926–28. That is, her false statements must have "sufficiently altered those processes as to have influenced an award of citizenship." *Id.* at 1928. The Court explained that the government could demonstrate that Maslenjak's false statements were material by showing either: (1) that the facts Maslenjak misrepresented are themselves disqualifying (the "stand-alone theory"); or (2) that the lies could have "led to the discovery of other facts" which are disqualifying (the "investigation-based theory"). *Id.* at 1928–29 (quoting *Chaunt v. United States*, 364 U.S. 350, 352–53 (1960)).

Here, the district court's instructional error was not harmless because the government has not proven beyond a reasonable doubt that a properly instructed jury would have concluded either: (1) that the facts Maslenjak misrepresented were themselves disqualifying; or (2) that the misrepresentations prevented an investigation which would have predictably led to the discovery of other disqualifying facts. We therefore vacate Maslenjak's conviction and remand to the district court for a new trial.

A.

The Supreme Court instructed that the jury could have convicted Maslenjak if "the thing she misrepresented when seeking citizenship . . . were itself a reason to deny naturalization—say, because it counted as 'false testimony for the purpose of obtaining [immigration] benefits' and thus demonstrated bad moral character." *Maslenjak¸* 137 S. Ct. at 1930–31 (alteration in original).

Under this first, "stand-alone" theory, the government must prove that the misrepresented fact is alone disqualifying. *Id.* at 1928–29 ("[W]hen the defendant misrepresents facts that the law deems incompatible with citizenship, her lie must have played a role in her naturalization."). Proof that a naturalization applicant is not of good moral character is a stand-alone disqualifying fact. *See* 8 U.S.C. § 1427(a) (requiring that an applicant for naturalization have good moral character). Not just any lie establishes that a person lacks good moral character for the purpose of rescinding citizenship. *Maslenjak*, 137 S. Ct. at 1927 ("The statute's description of 'good moral character' singles out a specific class of lies . . . as a reason to deny naturalization."). Lies made "for the purpose of obtaining [immigration] benefits" negate the "good moral character" requirement. 8 U.S.C. § 1101(f)(6). But lies told out of "embarrassment, fear, or a desire for privacy"—as opposed to lies told "with the subjective intent of obtaining immigration benefits"—are not disqualifying facts under the "good moral character" requirement. *Kungys v. United States*, 485 U.S. 759, 780 (1988).

Here, the government has not shown "beyond a reasonable doubt" that the district court's erroneous jury instructions "did not contribute to the verdict obtained." *Neder*, 527 U.S. at 15 (quoting *Chapman*, 386 U.S. at 24). The district court instructed the jury that Maslenjak must

have acted "knowingly." DE 62, 4/17/14 Trial Tr. IV, Page ID 1120–21. And the jury found that she did, in fact, act knowingly—that she did not lie out of "ignorance, mistake, accident or carelessness." *Id.*

But the *purpose* for which Maslenjak made the false statements was never an issue at trial; indeed, the record does not directly speak to the purpose for which Maslenjak made the false statements. As the government argues, there is evidence in the record from which a reasonable, properly instructed jury *might* have inferred that Maslenjak lied for the purpose of obtaining immigration benefits. It is true that lying during an immigration proceeding could give a jury some context as to the purpose of the lie, especially here where Maslenjak's lie in connection with her refugee application went to the heart of her application. She both conjured up a reason to fear persecution by the Bosnian Serbs and hid a fact that may have prevented her husband from obtaining refugee status and citizenship. A reasonable juror *could* find that these lies speak for themselves. But the government's argument fails when analyzed under the relevant standard of review. The government must prove, *beyond a reasonable doubt*, that the jury *would* have found the defendant guilty absent the error. *Neder*, 527 U.S. at 15. The evidence must be "overwhelming." *Id.* at 17. Here, the evidence isn't overwhelming. We can't say that a properly instructed jury would undoubtedly conclude that Maslenjak lied for the purpose of getting immigration benefits, rather than out of embarrassment regarding her husband's service in a controversial military unit or out of fear that her family could be retaliated against for his military involvement.[1] And lies told out of "embarrassment, fear, or a desire for privacy" are not disqualifying facts under the "good moral character" requirement. *Maslenjak*, 137 S. Ct. at 1927 (quoting *Kungys*, 485 U.S. at 780). Also recall that Maslenjak gave two reasons for her family's fear of persecution in Bosnia. Only one of those reasons—that they feared retaliation for her husband's failure to serve in the VRS—was untrue. The fact that Maslenjak had another, seemingly legitimate basis for seeking refugee status creates doubt about whether she lied for the purpose of getting an immigration benefit.

---

[1]In fact, Maslenjak suggested at oral argument that she could introduce evidence on remand that she lied out of fear that her family back in Bosnia would be retaliated against for her husband's military involvement. *See Neder*, 527 U.S. at 15 (finding harmless error in part because the defendant did not "suggest that he would introduce any evidence bearing upon [the element omitted in the jury instructions] if so allowed").

Maslenjak's case is easily distinguishable from *United States v. Haroon*, 874 F.3d 479 (6th Cir. 2017). Like the case at bar, *Haroon* dealt with a conviction under § 1425(a) for making false statements by lying in response to questions 23 and 24 on the naturalization application. 874 F.3d at 483. And the *Haroon* court upheld the conviction. *Id.* at 481. But unlike Maslenjak, the defendant in *Haroon* challenged the sufficiency of the evidence supporting his conviction. *Id.* at 482. The sufficiency of the evidence standard is a very different standard of review than the "beyond a reasonable doubt" standard at issue here. Specifically, when reviewing a conviction on appeal for sufficiency of the evidence, this court "must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the Government, to uphold the jury's decision." *Burks v. United States*, 437 U.S. 1, 17 (1978).

Although the instant record contains evidence from which a jury *could* infer that Maslenjak's lies were for the purpose of obtaining immigration benefits, it lacks the "overwhelming" evidence required for this court to conclude that the error is harmless. *Neder*, 527 U.S. at 17. Moreover, unlike the defendant in *Haroon*, Maslenjak never conceded that she made a false statement for the purpose of obtaining immigration benefits. *See Haroon*, 874 F.3d at 483 ("Haroon does not contest that his statements were 'made with the subjective intent of obtaining immigration benefits.'" (quoting *Kungys*, 485 U.S. at 780)). *Haroon* therefore does not compel the conclusion that Maslenjak lacked good moral character.

As such, the government has not proven beyond a reasonable doubt that a properly instructed jury would have concluded that Maslenjak's false statements negated the "good moral character" requirement for citizenship. The error is therefore not harmless.

## B.

As to the second, "investigation-based" theory, the government must make a two-part showing. First, "the Government has to prove that the misrepresented fact was sufficiently relevant to one or another naturalization criterion that it would have prompted reasonable officials, 'seeking only evidence concerning citizenship qualifications,' to undertake further investigation." *Maslenjak*, 137 S. Ct. at 1929 (quoting *Kungys*, 485 U.S. at 774 n.9). Second, the government "need only establish that the investigation 'would predictably have disclosed' some

legal disqualification." *Id.* (quoting *Kungys*, 485 U.S. at 774). The government does not need to prove "definitively that its investigation would have unearthed a disqualifying fact." *Id.*

Here, even if Maslenjak's false statements had led to an investigation, such an investigation would not have predictably disclosed disqualifying facts. At trial, a district adjudications officer who interviewed Maslenjak for her naturalization application testified that if Maslenjak had responded "yes" to either question 23 or 24, there would have been further investigation into her application. This investigation likely would have led to the revelation that Maslenjak had lied about her husband's military service in her asylum interview. Mr. Maslenjak's military service may have been a disqualifying fact *for him*. But marriage to someone who is in a foreign military is not a fact which would have independently justified denying naturalization for Maslenjak herself. *See* 8 U.S.C. §§ 1422-27. And the government points to no other facts in the record which, even if known at the time of Maslenjak's naturalization application, would have made her ineligible for citizenship. Accordingly, the government has not proven beyond a reasonable doubt that a properly instructed jury would have convicted Maslenjak based on an "investigation-based" theory.

## IV.

For these reasons, we vacate Maslenjak's convictions and remand to the district court for a new trial.